## Richmond.

## PRINTZ V. MCLEOD, ET ALS.

### November 18, 1920.

1. SPECIFIC PERFORMANCE—*Agreement to Dispose of Property by Will.*—Strictly speaking, an agreement to dispose of property by will cannot be specifically enforced, not in the lifetime of the party, because all testamentary papers are from their nature revocable; not after his death, because it is no longer possible for him to make a will; yet courts of equity can do what is equivalent to a specific performance of such an agreement by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with its terms, upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser with notice of the agreement, as the case may be.

2. SPECIFIC PERFORMANCE—*Mutual Mistake.*—Where the language employed in a contract has been used under a mutual mistake as to its application—the contracting mind of both parties being affected and misled by such mistake, so that their minds do not meet upon a definite conception of the meaning of the language used—such mistake is of itself sufficient to bar the enforcement of the specific performance of the contract at the suit of either party.

3. SPECIFIC PERFORMANCE—*Mutual Mistake—Case at. Bar.*—In the instant case an aunt had contracted with her nephew in consideration of his taking care of her and staying with her during her lifetime to give him "her property of every description."

   *Held:* That notwithstanding the broad language "property of every description," the contract did not apply to a tract of land to which both the aunt and the nephew mistakenly believed the aunt had no title, and as to which she had expressly and continuously disclaimed any ownership of interest.

4. PAROL EVIDENCE—*Mutual Mistake—Language Used in Contract Broader Than Intended.*—Where due to the mutual mistake of both parties the language used in a contract is broader in its ordinary meaning than was in fact intended, and by means of such mistake the contract may include within its terms cer-

tain subject matters—as for example lands—which were not intended by the parties to come within its operation, parol evidence is admissible to narrow and restrict the meaning of the language used so that it will accord with the actual meaning of the parties.

Appeal from a decree of the Circuit Court of Page county. Decree for defendants. Complainant appeals.

*Affirmed.*

This is a suit in equity, instituted by the appellant against the appellees, who are the heirs at law of Alithia S. Koontz, deceased, seeking to enforce an alleged trust arising under an executory contract. The contract referred to is in writing and is as follows:

"This contract made and concluded this twentieth day ot December, 1910, by and between Alithia Koontz, Stanleytown, Page county, Virginia, and Raymond Printz, of the same place, party of the second part.

"The said party of the second part contracts and agrees to and with the said party of the first part to take care of her and stay with her during her life·time; and the said party of the first part contracts and agrees to give to said Raymond Printz her property of every description.

"In witness whereof we have hereunto set our hands and seals on the day and year first above written.

(Signed) ALITHIA KOONTZ,
RAYMOND PRINTZ."

There is no controversy about the facts, that the appellant fully performed said contract on his part, and that before and at the time the contract was entered into and thereafter until her death, the other party to the contract (who will be hereinafter referred to as Mrs. Koontz), was the owner in fee of an undivided one-half interest in a tract of mountain land, lying mostly in Page county—a

small portion of it being in Madison county—Virginia, containing 530 acres more or less, which land, sometimes called in the record the "Ridge" land, was conveyed to Mrs. Koontz and Isaac Koontz, her husband, jointly, by deed from Michael Long and wife, of date January 1, 1885, which deed was duly recorded long before said contract was entered into.

The bill of appellant alleges that Mrs. Koontz died seized and possessed of said one-half undivided interest in said land, and that under said contract, by reason of his having fully performed the same on his part, the appellant is entitled to such interest in such land, and he prays that he may be declared by the court to be entitled thereto, and that decree be entered requiring a conveyance thereof to be made to him by a commissioner of the court.

The appellees defended in the court below (and rely upon the same position before us) on the ground that the half interest in said land was not, at the time said contract was entered into, within the contemplation of either of the parties thereto, and was not intended to be embraced within the subject matter thereof; that, at the time of the contract and from thence until her death, Mrs. Koontz did not claim ownership of such interest in said land, but on the contrary expressly disclaimed such ownership, being under the impression that it passed under the will of her husband, who died in 1908, which gave her a one-third interest for life in all of his property; that the appellant at the time of such contract well knew of such disclaimer of ownership by Mrs. Koontz, and that she did not intend the contract to cover any interest of hers in said land; and that the appellant did not at the time of the contract expect to derive thereunder any interest in such land.

The decree under review sustained such position of the appellees, and dismissed the bill of the appellant.

Leaving wholly out of consideration certain testimony

as to the contents of certain lost letters of Mrs. Koontz, objections to which form the basis of certain assignments of error, the following may be stated to be the material facts in the case:

The appellant was a great-nephew of Mrs. Koontz, who was herself childless. Appellant was born in her home, lived there nearly all of his life up to the time of the death of Mrs. Koontz and was there reared and brought up as if he had been her son. The relationship between appellant and Mrs. Koontz was most intimate and affectionate, as if between son and mother; from the childhood of the former until the death of Mrs. Koontz. Mrs. Koontz died intestate in June, 1916.

Isaac Koontz, the husband of Mrs. Koontz (who will be hereinafter referred to as Mr. Koontz), died in 1908, leaving a will, which is above and will be hereinafter again mentioned. He had one child by a former marriage, Wm. D. Koontz, who, however, prior to 1870 (before which date Mr. and Mrs. Koontz were married), located in Illinois, and thereafter lived and died there, before the death of his father.

For the purpose of the decision of this cause, it may be taken to be a fact, although the evidence on the subject in the record is scant and indefinite, that after the marriage of Mr. and Mrs. Koontz, the latter derived some money, probably $1,400 to $1,600, from the sale of property owned by her prior to such marriage, located in one of the Western States, which money, with the permission of Mrs. Koontz, came into the hands of Mr. Koontz, and which the former allowed the latter, for the most part, to use and invest as he chose, as if it were his own.

There is evidence tending to show that some of the money above mentioned was invested by Mr. Koontz in the purchase of a certain 109-acre tract of land and of the said "Ridge" tract of land.

The "Ridge" tract of land was purchased on January 1, 1885, for the consideration of $1,300, of which $700 was paid in cash and the residue was thereafter paid in instalments, the obligations for which were evidenced by two bonds of Mr. and Mrs. Koontz for $300 each, of even date with the deed from the vendor, payable January 1, 1886, and January 1, 1887, with interest from date, secured by vendor's lien reserved on the face of the deed.

Although the evidence on this subject also is scant and indefinite, it may be taken to be a fact, in so far as the decision of this cause is concerned, that at the time of said purchase of the "Ridge" land, Mrs. Koontz stipulated that she would be a joint purchaser of it with her husband, to which he consented, and that she understood at the time that she was such joint purchaser, and thereafter understood that some of her money paid for one-half of this land, but did not concern herself about the form of the deed of conveyance of the land, leaving all of that to be determined by her husband, and did not then or thereafter know that she was a grantee in the deed, and, in fact, supposed that he had taken the conveyance of this land to himself alone, as he did take the conveyance of the 109-acre tract.

Appellant before and at the time of the contract with Mrs. Koontz was under the same impression, viz: that the deed to the "Ridge" land was made to Mr. Koontz alone, and appellant did not discover how the deed was in fact made until after Mrs. Koontz's death, as will be hereinafter more particularly mentioned.

There is also evidence tending to show that after the "Ridge" land was bought, it was used by Mr. Koontz as pasture land for his own cattle, and some years he rented certain grazing privileges thereon to others, and that he spoke of a portion of this grazing rental as belonging to Mrs. Koontz and he was seen on a number of occasions when he came home with collections of this grazing rental

to lay the money down and tell Mrs. Koontz to take out her part of it, whereupon she was seen to take part of the money, the evidence, however, not showing expressly what part of it she took on these occasions. But the evidence shows that Mrs. Koontz never regarded her receipt of these rents as a matter of right which her husband could not withhold from her, but rather as a matter within his rightful control, which he could allow to her or not as he chose.

The material clause of the will left by Mr. Koontz upon his death in 1908 is as follows:

"I give and bequeath to my beloved wife, Alithia S. Koontz, during her lifetime, and then to my son Wm. D. Koontz, one third of my real and personal property."

Wm. D. Koontz having died prior to the testator, the heirs of Wm. D. Koontz took in remainder under such will.

Following the death of Mr. Koontz, Mrs. Koontz, being under the impression that her husband, by his will, undertook to devise the "Ridge" tract of land, along with the "home place," the 109-acre tract, and still another tract of land, and that she had a life estate of one-third only in all of such lands under such will, made an agreement with the descendants of Wm. D. Koontz whereby she was to remain in possession of, manage and rent all of said lands, and after deducting all costs and charges in connection therewith, was to remit two-thirds of the net proceeds to such descendants and retain the remaining one-third thereof for herself. Thereupon Mrs. Koontz rented all of said lands to appellant, who furnished the necessary labor, etc., and worked and grazed and otherwise managed the same from 1909 until the death of Mrs. Koontz in 1916, during which time two-thirds of the rent, including two-thirds of the whole rent from the "Ridge" tract of land, was paid

to the said Wm. D. Koontz descendants by the appellant, acting for Mrs. Koontz.

This arrangement was in force when the contract between appellant and Mrs. Koontz was entered into, and that Mrs. Koontz had by such arrangement evidenced her relinquishment of all claim, equitable as well as legal, to any interest in the "Ridge" tract of land, except under the will of her husband, was well known to the appellant at the time of said contract between him and Mrs. Koontz. Indeed appellant in his deposition in the cause testifies on this subject as follows:

"I told her" (Mrs. Koontz) "she ought to keep more than one-third of the Ridge land money, as she owned part of it, but she seemed to think it was uncle's" (Mr. Koontz's) "wish as expressed in his will that she should only keep one-third of it and send the rest to them" (the Wm. D. Koontz descendants) "and she wanted to carry out his wishes."

At the time of said contract, so far as the record discloses, Mrs. Koontz claimed to own no property whatever except certain personal property which had been allotted to her in the appraisal of her deceased husband's estate, which was of no great value, and what money, if any, she may have then received from the rental of the lands under the arrangement. She was then seventy-six years old and had no prospect of accumulating any other property before her death, except such money as she might receive from said rental. All of this was well known to appellant at the time of said contract.

In a letter written by appellant in September, 1916, soon after the death of Mrs. Koontz, to one of the heirs of the latter, the appellant says:

" * * * we are aware, as you stated, that Aunt" (Mrs. Koontz) "had some money when she married Mr. Koontz, consisting in part of land in Nebraska, but Mr. Koontz persuaded her to sell that land and invest her money

in land here. Therefore, she sold that land and Mr. Koontz invested all of her money in Page county land. But the trouble is, he invested it in his own name, and it will all go to his people. Mr. Koontz's will directed that Aunt should have a one-third interest in his estate during her lifetime, and then it should go to his son, William; so you see. Aunt's people are out altogether. It was most unfair on uncle's part, and I can't understand why he arranged affairs as he did, as he was always perfectly upright in all he did. We urgently and persistently advised Aunt to break his will, as she could easily have done, but she wouldn't hear to doing anything of the kind, and I think it is too late to do anything now. Even the personal property that Aunt kept when uncle's property was appraised reverted to his heirs after her death, as he stipulated it should. Therefore, Aunt had practically nothing to leave. She had several hundred dollars in money. She left her affairs in my hands and directed that I should send Aunt Mat $10.00, Sallie $5.00, Augusta $5.00, Eloise her watch, Mamie $10.00 and several other small bequests to relatives here, then settle up her affairs, such as doctor's bills, burying expenses, have a tombstone erected and what was left to go to me. After all is straightened up this will amount to very little over a hundred dollars if any   *   *   *   "

About this time two suits were brought in the Circuit Court of Page county, to which the heirs of Wm. D. Koontz were parties, in which the sale of all of said land, including the "Ridge" land, was sought, and in which it was alleged that they all belonged wholly to Mr. Koontz in his lifetime and passed under his will; and there was a decree entered in these suits for the sale of all of such lands accordingly, and such sale was advertised by special commissioner's of court under the decree, to take place on February 5, 1917.

Mr. Landram, one of the special commissioners just mentioned, testifies that "on January 11, 1917, I went into the

clerk's office with the purpose of abstracting the titles, so as to be in possession of the information necessary to make proper conveyances when sold, and much to my surprise I found that 530 acres of the mountain grazing land" (the "Ridge" tract) "had been deeded by Michael Long and wife to Isaac Koontz and Alithia Koontz, his wife, which deed was dated January 1, 1885, and recorded in deed book No. 4 at page 232." On January 19, 1917, this witness wrote the appellant a letter, informing him of the discovery made in the clerk's office, and requesting the appellant to come to Luray to see witness. The result of this was that on January 27, 1917, there was an interview between such witness and appellant at Luray. In his deposition this witness was asked the following question concerning what was said by appellant in this interview, to which the witness answered as follows:

"Q. 36. State, Mr. Landram, what was said by Printz as to the first knowledge of the ownership of this land by Mrs. Koontz?

"A. Well, he said he was as much surprised as I was, and neither he nor Mrs. Koontz knew that she had any such interest, and that he had often discussed with Mrs. Koontz after her husband's death the fact that her husband had left her only a life estate, notwithstanding the fact that he had sold certain lands in the West belonging to her, and she thought he had reinvested the proceeds of such sales in lands here. He further stated that he had tried to get his aunt to bring a suit setting up the fact that some of her funds had been used in buying lands that had been deeded to her husband, and that she ought to be allowed to recover from the estate, but that his aunt seemed wholly indisposed to disturb the dispositions her husband had made. He further told me that if he won in the suit and got the land that he would get that much more than he ever expected to

get under his contract or at the time he made the arrangement with his aunt."

Thereafter, in May, 1918, the appellant filed his bill in this suit.

*Brown & Price* and *S. Hamilton Graves,* for the appellant.

*Waller R. Staples* and *Wm. F. Keyser,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The parties on both sides of the controversy in this cause concur in treating the contract between the appellant and Mrs. Koontz as an executory contract on the part of the latter, for a valuable consideration, binding her to make a will devising to appellant the property which was the subject of the contract, and in considering such contract as valid and binding upon and enforceable in equity against the heirs of Mrs. Koontz to the extent that such subject matter is identified with that certainty which the rules of equity in such case require. The controversy is over the question of whether the "Ridge" land is to be regarded as forming a part of the subject of the contract.

The suit is in effect a suit for specific performance of the contract in question, which is set out at length in the statement preceding this opinion.

[1] As said in *Burdine* v. *Burdine's Ex'r,* 98 Va. 515, at p. 519, 36 S. E. 992, at page 993 (81 Am. St. Rep. 741): "Strictly speaking, an agreement to dispose of property by will cannot be specifically enforced, not in the lifetime of the party, because all testamentary papers are from their nature revocable; not after his death, because it is no longer possible for him to make a will; yet courts of equity can do what is equivalent to a specific performance of such an

agreement by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with its terms, upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser with notice of the agreement, as the case may be. 3 Parson's on Contracts, section 406 (6th ed.) ; *Hale* v. *Hale,* 90 Va. 728, 730, 19 S. E. 739."

[2] Now there are cases in which it is well settled that the reasonable mistake of one party only to a contract, because of which he was induced to execute it, will bar the enforcement of the specific performance of it in a suit against such party. But in the case before us we do not have to inquire whether that principle is applicable. There is also a broader principle applicable to contracts in which the language employed therein has been used under a mutual mistake as to its application—the contracting mind of both parties being affected and misled by such mistake, so that they do not meet upon a definite conception of the meaning of the language used. In such cases it is also well settled that such mutual mistake is of itself sufficient to bar the enforcement of the specific performance of the contract at the suit of either party.

As said in 1 Story's Eq. Jur. (13th ed.), sec. 140, pp. 149-150 : "The general rule is that an act done or contract made under a mistake or ignorance of a material fact is voidable and relievable in equity." And again, *Idem,* section 144, p. 161 : "The same principle will apply in cases of purchases when the parties have been innocently misled under a mutual mistake as to the extent of the thing sold." And again, *Idem,* section 145, p. 162 : "It is upon the same ground that a court of equity proceeds where an instrument is so general in its terms as to release the rights of the party to property to which he was wholly ignorant that he had any title, and which was not within the contemplation of the bargain at the time it was made. In such cases the court restrains the instrument to the purposes

of the bargain, and confines the release to the right intended to be released or extinguished."

On the same principle, in *Irick* v. *Fulton's Ex'rs*, 3 Gratt. (44 Va.) 193, a deed was set aside which by its terms conveyed a greater interest in land than either the grantors or the grantee contemplated at the time of the conveyance as the subject of the contract. As said in the opinion of this court in that case, delivered by Judge Baldwin: "By the contract evidenced by the deed, * * * made under the belief of the parties that the said Elizabeth Irick was entitled only to an undivided interest or share in said property, as one of the children and heirs of Betty Havely, the parties only sold and purchased, and only intended to sell and purchase, such undivided interest; and consequently neither said Fulton's Ex'ors" (the grantees in the deed), "nor the purchasers under them, have acquired the said Elizabeth Irick's right to a greater extent than such undivided interest; * * * *"

Applying the above mentioned principle to the facts of this case, which are set out in the statement preceding this opinion, we have no hesitancy in holding that there is no error in the finding of fact of the court below or in the decree under review in its refusal of specific performance of the contract and in its dismissal of the bill of the appellant praying therefor.

[3] It is plainly a case in which, at the time the contract was entered into, Mrs. Koontz did not intend to agree to give or sell to appellant, and appellant did not intend to contract for or purchase any interest of Mrs. Koontz in the "Ridge" land, either equitable or legal. Mrs. Koontz before and at that time continued to expressly disclaim any ownership of any interest in such land, except a life estate of one-third under the will of her deceased husband, which appellant does not claim was intended to be embraced in the terms of the contract. This disclaimer was well known to appellant before and at the time of the contract.

Moreover, this disclaimer was actuated by a fixed purpose on the part of Mrs. Koontz never in future to question what she understood to be the wishes of her deceased husband as expressed in his will that she should take after his death in 1908 only an interest in said land of one-third thereof during her life, as was also well understood by appellant at the time of said contract.

Neither party to the contract contemplated that the appellant would acquire thereunder whatever right, legal or equitable, Mrs. Koontz might have in the "Ridge" land at the time, whether she then claimed or intended thereafter to claim such right or not. Their minds did not meet upon any such contract.

It is true that Mrs. Koontz, in her attitude of mind of disclaimer aforesaid, was acting in ignorance of the fact that the deed to the "Ridge" land was not made to her deceased husband as sole grantee, as she supposed, but conveyed to her a legal estate of one-half undivided interest in such land. But it is also true that appellant at the time of the contract was acting in like ignorance of the actual form of the deed to the "Ridge" land. Both accordingly entered into the contract under the actual contemplation that the language employed in the contract did not embrace any legal interest of Mrs. Koontz in the "Ridge" land. This turned out to be a mistake, but it was a mutual mistake of both parties. It was due to the ignorance of them both of the actual form of the deed of which they both were ignorant at the time the contract was entered into. In that situation we must hold that the broad language of the contract, to-wit, "her property of every description," was used by mutual mistake of both parties to the contract, in so far as its application to any legal interest of Mrs. Koontz in the "Ridge" land is concerned.

And as to any equitable interest of Mrs. Koontz in the "Ridge" land, the language of the contract was also used by both parties in mutual mistake of its meaning. It is clearly

shown by the evidence, that Mrs. Koontz did not intend to sell, nor did the appellant intend to purchase such interest. The language of the contract, therefore, in so far as it is broad enough to embrace the equitable interest of Mrs. Koontz in such land, was used by the parties under a mutual mistake as to its application.

[4] In other words, the contract under consideration falls within that class discussed in 2 Pomeroy's Eq. Jur. (3d ed.), sections 865-7 and foot notes, in which, due to the mutual mistake of both parties, there is error which consists in the use of language which is broader in its ordinary meaning than was in fact intended. In such classification of such contracts in the learned work just mentioned, in section 865, this is said: "1. By means of the error the contract may include within its terms certain subject matters —as for example lands—which were not intended by the parties to come within its operation, in which case the parol evidence will show that such subject matters should be omitted, and the relief demanded will be a correction which shall exclude them, and confine the operation of the agreement to the remaining subject matters mentioned in it to which alone it was intended by the parties to apply." As shown by such learned work, it is universally held that parol evidence is admissible to narrow and restrict the meaning of the language used in such contracts so that it will accord with the actual meaning of the parties.

Hence the court below was plainly right "in restraining the instrument to the purposes of the bargain"—to use an expression above quoted from the learned work of Story's Eq. Jurisprudence—and in thus refusing to enforce the contract as embracing any interest of Mrs. Koontz in the "Ridge" land.

There being no other question raised by the assignments of error which is involved in the decision of the case, the decree under review will be affirmed.

*Affirmed.*