**Salem**

GARY JENNINGS

v.

GLENDA C. JENNINGS

No. 0480-90-3

Decided August 27, 1991

COUNSEL

Stuart H. Dunn (Jane Chittom; Shuford, Rubin, Gibney & Dunn, on briefs), for appellant.

Neal S. Johnson (Natkin, Heslep, Siegel & Natkin, P.C., on brief), for appellee.

OPINION

**BENTON, J.**—Gary Jennings appeals from a divorce decree and raises five issues for our consideration: (1) whether the Separation and Property Settlement Agreement into which he entered with his wife, Glenda C. Jennings, is void due to a mutual mistake of fact; (2) whether the Agreement is unconscionable; (3) whether the trial judge erred in awarding the wife spousal support; (4) whether the trial judge erred in awarding the wife pre-separation book royalties pursuant to the Agreement; and (5) whether the wife abandoned the Agreement.

## FACTS

We review the evidence contained in the record under familiar principles:

> We may only reverse the decree if it is plainly wrong or without evidence to support it. We examine the record in the light most favorable to the prevailing part[y] and determine whether substantial credible evidence supports the chancellor's decision.

*Carter v. Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982) (citations omitted); Code § 8.01-680. So viewed, the evidence proves that the parties married in 1972 and lived modestly during the early years of their marriage while the husband pursued his writing career. The husband is an alcoholic and through the years has been prone to cyclical binges. With his wife's help, he has managed on occasion to curb the severity of his alcohol dependence. He is a successful historical novelist and has earned substantial incomes from several novels. Before the parties separated, he conceived, researched, outlined, and signed a publishing contract for a new book.

In June 1986, the wife witnessed the husband committing adultery. She left their home and filed for divorce. During a brief separation, the couple spoke frequently by telephone. The wife returned home on the husband's request to wean him from a drinking episode. He wanted to reconcile; however, for security she insisted on an agreement. In July 1986, the wife agreed to return to the marriage in exchange for the husband's assurances of future support if the reconciliation failed. A year earlier, the wife had filed for a divorce but dismissed the suit when they rec-

onciled. This time, the husband agreed to give assurances and dictated the conditions guaranteeing her future security.

A paper written in the wife's handwriting and signed by the husband provides the following:

> I . . . agree during the next six months to support Glenda Jennings . . . . If at the end of those six months we have not come to an amicable solution . . ., I will have all our property assessed . . ., and we will split proceeds evenly down the middle. In addition I will deed over to her 50% of all my royalties, contracts, subsidiary rights, foreign rights, pending (1) rights and will instruct my agents to pay checks in equal parts to her and myself.

> \* \* \*

> s/ Gary Jennings
> 29 July 1986

> (1) This will include all monies received or to be received from . . . rights on the books *Aztec, The Journeyer, Spangle* and the book to be written with working title of *Raptor.*

With this document, the parties went to the wife's attorney's office where a Separation and Property Settlement Agreement was discussed and drafted. While the Agreement was being typed, the husband and wife went for a drive. The Agreement provides in part the following:

> . . . [A]s the court favors settlement of disputes between the parties in lieu of proceedings upon the grounds set forth [in the pending suit], the Wife agrees she will obtain the divorce upon the grounds of six months separation, to-wit: a no-fault divorce.

> \* \* \*

> Husband agrees that he will make periodic support payments for the remainder of Wife's life, or until she remarries, in an amount to support Wife in the style to which she was accustomed during the marriage of the parties.

> \* \* \*

If, at the end of the six months separation period, the parties have not reconciled their differences and resumed cohabitation, then a divorce may be obtained in accordance with the paragraph set forth above. All of the property . . . that was obtained during the marriage . . . will be appraised. . . . [T]here shall be a 50/50 division of all said real and personal assets. . . .

\* \* \*

The clear intent of the above paragraph is that there be an equal division between the parties, either in kind or by reducing said property to money.

\* \* \*

[Husband] does hereby acknowledge that the Wife, as her part under the equitable distribution as provided by Virginia law, is entitled to 50% of all royalties . . . and pending rights. Husband agrees to instruct his agents to pay by separate checks in equal parts from the above to the Wife and Husband.

\* \* \*

It is agreed that Wife's 50% of equitable distribution shall include . . . all monies received or to be received in the future, from [all rights] on . . . *Aztec*, *The Journeyer*, *Spangle*, and a book to be written . . . which has a working title of *Raptor*.

\* \* \*

It is understood and agreed by the parties herein that each will be responsible for his or her own attorney's fees.

\* \* \*

In the event of a reconciliation and resumption of the marital relationship between the parties, all of the provisions of this Agreement . . . shall continue in full force and effect without abatement of any terms.

After the Agreement was typed, all the provisions were explained to the husband by the wife's attorney. The husband was given an opportunity to obtain legal counsel; however, he read the Agreement, initialed each page, and insisted on signing the Agreement after he read it. The husband claims to have been woozy at

the time and to remember little of the incident. The wife and her attorney observed no indication that the husband had been drinking or was under the influence of alcohol. The wife's attorney testified that the husband spoke intelligently and firmly.

After signing the Agreement, the couple returned home and resumed their marital relationship for fourteen months. The wife again left the home in September 1987 and filed for divorce on the grounds of cruelty and constructive desertion. The trial judge awarded the wife a no-fault divorce and $1000 per month for permanent spousal support, but did not award attorney's fees. The Agreement was affirmed, ratified, and incorporated by reference in the decree of divorce. Code § 20-109.1.

### MUTUAL MISTAKE OF FACT AND LAW

The husband argues that the Agreement should be rescinded because the parties entered the contract while sharing misconceptions of the tax consequences and Virginia's equitable distribution statute. The trial judge found no mutual mistake. We conclude the trial judge reached a proper result.

■ Generally, "[i]f certain facts are assumed by both parties as the basis of the contract, and it subsequently appears that such facts did not exist, the contract is inoperative." *Virginia Iron, Coal & Coke Co. v. Graham*, 124 Va. 692, 708, 98 S.E. 659, 664 (1919).

> The mistake may be common to both parties to a transaction, and may consist either in the expression of their agreement, or in some matter inducing or influencing the agreement, or in some matter to which the agreement is to be applied. Nothing is more clear in equity than the doctrine that a contract founded in mutual mistake of the facts constituting the very basis or essence of it will avoid it.

*Briggs v. Watkins*, 112 Va. 14, 25, 70 S.E. 551, 554 (1911) (citation omitted). On the other hand, relief will not be granted where the parties, operating with knowledge of all material facts, enter the agreement under a mutual mistake of law. *See Piedmont Trust Bank v. Aetna Casualty & Sur. Co.*, 210 Va. 396, 401, 171 S.E.2d 264, 267-68 (1969).

We need not decide, however, whether this case, as it concerns the parties' understanding of the tax consequences, constitutes a mistake of fact or law requiring rescission of the Agreement. The Supreme Court wrote in *Printz v. McLeod*, 128 Va. 471, 104 S.E. 818 (1920):

> [T]he contract under consideration falls within that class . . . in which, due to the mutual mistake of both parties, there is error which consists in the use of language which is broader in its ordinary meaning than was in fact intended. . . . "1. By means of the error the contract may include within its terms certain subject matters . . . which were not intended by the parties to come within its operation, in which case the parol evidence will show that such subject matters should be omitted, and the relief demanded will be a correction which shall exclude them, and confine the operation of the agreement to the remaining subject matters mentioned in it to which alone it was intended by the parties to apply."
>
> * * *
>
> Hence the court below was plainly right "in restraining the instrument to the purposes of the bargain."

*Id.* at 484, 104 S.E. at 822. This doctrine is more aptly applied to the case at bar than the former recitations. The husband's argument focuses neither on the actual or precise impact of applicable tax laws nor on the wife's understanding of the tax consequences. Rather, he discusses what the parties truly intended when they agreed to divide equally the "royalties." The true issue presented is whether the term "royalties," as used in the Agreement, meant net or gross royalties.

The evidence convincingly demonstrates that the parties intended to divide the after-tax royalties rather than rest the tax burdens entirely on the husband. The handwritten agreement the husband signed evidences an intent to "split proceeds evenly down the middle." The plain import of the phrase is that the parties would receive equal sums for their disposal. This intent was incorporated into the Agreement, which provides for "a 50/50 division of all said real and personal assets." The equal distribution is recognized throughout the contract. The Agreement further identifies

itself as an "equitable distribution." The testimony proved that it was contemplated that "each would pay their own taxes if [the checks] were sent to them [by the agent], because it would be earnings to her."

On this evidence, we conclude the parties intended to divide the royalties after accounting for taxes. The express intent to split the property and income "50/50" manifests an intent that each party would equally enjoy the benefits of the property and income and would equally shoulder the burdens. In reaching this conclusion, we must remand the case for a reconsideration of the award since the husband presented no evidence of tax payments or liabilities or publishing fees which may lessen the gross value of the income produced by his publishings.

■ This holding accords with the accepted tenets of contract interpretation. "The tendency of the courts is to give to contracts life and virility by interpretation of their fair intendment — not to destroy them." *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 590, 194 S.E. 727, 733 (1938). In so doing, " 'all of the provisions of a contract should be construed together.' " *Chantilly Constr. Corp. v. Department of Highways & Transp.*, 6 Va. App. 282, 293, 369 S.E.2d 438, 444 (1988) (quoting *Seward v. American Hardware Co.*, 161 Va. 610, 626, 171 S.E. 650, 659 (1933)).

[I]t is a familiar legal maxim that ambiguous contractual provisions are construed strictly against their author.

. . . [But] the intention of the parties is the controlling factor. General rules of construction, therefore, should not be applied mechanistically, with the result that the intention of the contracting parties is thwarted.

*American Realty Trust v. Chase Manhattan Bank*, 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981) (citations omitted). These principles support our conclusion that the parties intended to divide the after-tax royalties rather than the gross royalties.

We do not agree with the husband's contention that there was a mutual mistake as to Virginia's equitable distribution statute. We do not read the passage in which the husband acknowledges the wife's entitlement to fifty percent of the royalties "as her part

under the equitable distribution as provided by Virginia law" to represent the parties' belief that Code § 20-107.3 mandates an equal distribution. The language, read in the context of the entire agreement, indicates the parties' intention to supplant the court's distribution authority by mutual assent.

The husband's alleged misunderstanding, if it be true, constitutes a mistake of law. The evidence does not suggest that the wife in any respect knowingly misrepresented the equitable distribution law or knowingly took advantage of the husband's alleged misunderstanding. "*[I]gnorance of law* . . . is never ground for rescission of a contract unless perhaps where the other party knowingly has taken advantage of such ignorance for fraud." *Broaddus v. Broaddus*, 144 Va. 727, 746, 130 S.E. 794, 800 (1925) (emphasis in the original). The evidence overwhelmingly proves that the substance of Code § 20-107.3 was not a basis upon which the parties contracted. Had it been a substantial concern, the husband was afforded ample opportunity to seek legal counsel. The Agreement, however, fell squarely within the parties' original intentions. Any alleged misunderstanding of law was immaterial to their mutual assent. *See Brown v. Rice's Adm'r*, 67 Va. (26 Gratt.) 467, 470 (1875). Thus, the trial judge did not err in denying rescission on that ground.

## UNCONSCIONABILITY

The husband asserts the Agreement is unconscionable in its inception and in its terms. The record, however, supports the trial judge's finding that the Agreement is not unconscionable.

"When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief."

*Derby v. Derby*, 8 Va. App. 19, 28-29, 378 S.E.2d 74, 79 (1989) (quoting 3 J. Pomeroy, *Equity Jurisprudence* § 928 (5th ed. 1941)). Credible evidence in the record amply demonstrates that the husband was of a sound and intelligent mind when he suggested an agreement, when he negotiated the terms of the Agree-

ment, and when he signed the Agreement. Nothing indicates the attorney or the wife misled the husband or concealed material facts or incidents of the Agreement. The husband maintained control of the couple's property and assets and the royalties. The husband was afforded and declined an opportunity to obtain his own legal counsel. Neither the wife nor the attorney pressured the husband to enter into the Agreement. Instead, he insisted on signing the Agreement. Further, the Agreement does not represent such a disparity in values to indicate that no reasonable person would have so contracted. *See Drewry v. Drewry*, 8 Va. App. 460, 472-73, 383 S.E.2d 12, 18 (1989). The record, thus, supports the trial judge's finding that the husband was competent and coherent when these events occurred. That the husband may have possessed some human frailty or compelling personal agenda will not alone relieve him of his obligations arising under a contract in which he was perfectly capable of negotiating and entering. *Cf. id.* at 467-69, 383 S.E.2d at 15-16.

### SPOUSAL SUPPORT

The husband contracted to "make periodic support payments . . . in an amount to support Wife in the style to which she was accustomed during the marriage." Had the parties not intended that spousal support be separate and distinct from the division of royalties and equal property distribution, there would have been no need for this clause.

> "The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document."

*Tiffany v. Tiffany*, 1 Va. App. 11, 16, 332 S.E.2d 796, 799 (1985) (quoting *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)). The trial judge properly interpreted the Agreement and possessed authority to award spousal support not inconsistent with the Agreement. Code § 20-109.

 Whether to award spousal support and the particular amount lies within the sound discretion of the trial judge. *E.g.*, *McGuire v. McGuire*, 10 Va. App. 248, 251, 391 S.E.2d 344, 347 (1990). The trial judge must consider the factors enumerated in Code § 20-107.1 when calculating an award. *Ray v. Ray*, 4 Va.

App. 509, 513, 358 S.E.2d 754, 756 (1987). Included in this calculation are the "earning capacity, obligations, needs and financial resources of the parties." Code § 20-107.1(1). The trial judge, in his opinion letter, expressly considered each statutory factor in arriving at an award. The trial judge properly gave effect to the provision binding the husband to maintain the wife at a standard enjoyed during the marriage. Should the parties' circumstances change materially, either party may return to the court and seek an adjustment pursuant to the Agreement. *See* Code § 20-109.

### 1987 ROYALTIES

The trial judge committed no error in awarding the wife part of the royalties received in 1987 under the terms of the Agreement. The husband argues that the funds were earned throughout 1987 and, therefore, were used in part to support the parties. By mere fortuity, he contends, the payment arrived after the separation. The husband, however, agreed "that Wife's 50% of equitable distribution shall include . . . all monies received or to be received in the future, from [all rights] on . . . *Aztec*, *The Journeyer*, *Spangle*, and a book to be written . . . which has a working title of *Raptor*." He conceded on brief that the 1987 royalty figure was based on sums delivered after the parties separated. It is of no moment that the date of receipt may have been fortuitous. The wife requested in her pleading that judgment be entered on monies received after the separation. The husband received the contested amounts after that time. Notwithstanding that the 1987 royalties may be attributed to the entire year, the Agreement contemplates "all monies received," not just those received after separation. The award, therefore, was consistent with both the Agreement and the wife's requested relief.

### ABANDONMENT

The husband last contends the wife abandoned the Agreement by reconciling, by requesting a fault-based divorce, and by requesting an award for her attorney's fees. We disagree.

The parties' purpose in entering the Agreement was to guarantee the wife's welfare should the parties thereafter separate and seek a divorce. The Agreement expressly provides:

In the event of a reconciliation and resumption of the marital relationship between the parties, all of the provisions of this

Agreement . . . shall continue in full force and effect without abatement of any terms.

"It thus plainly appears from the [contract] itself . . . that it was not the intention of either of the parties . . . to . . . [cancel] the contract which in effect constituted a postnuptial settlement on the wife." *Barnes v. American Fertilizer Co.*, 144 Va. 692, 723, 130 S.E. 902, 911 (1925). "[T]he general rule may be stated to be that a postnuptial settlement or agreement made when the parties are already separated or while a divorce suit is pending between them, as a matter of law, is not abrogated by the subsequent reconciliation of the parties." *Id.* at 723, 130 S.E. at 912. The language of the Agreement unequivocally demonstrates the parties intended the Agreement to survive any reconciliation.

The Agreement specifically provides that "the Wife agrees she will obtain the divorce upon the grounds of six months separation, to-wit: a no-fault divorce." Although the wife sought a fault-based divorce in contravention of the spirit of the Agreement, she ultimately obtained a no-fault divorce. Hence, even if her fault claim in the divorce pleadings may be considered a breach, it was immaterial.

For the same reason, it cannot be said that the wife's claim of attorney's fees materially breached the Agreement. The Agreement commands "that each [party] will be responsible for his or her own attorney's fees." There is no allegation that the trial judge entered any order conflicting with that particular provision. As the ultimate outcome is in accordance with the parties' intentions, the wife's request for attorney fees did not constitute a material breach of the Agreement.

■ We find no merit in the husband's argument that the wife breached her only executory obligations under the Agreement and, therefore, that the Agreement should be rescinded. The writing evidences an intention to effect an equal distribution of the parties' property instead of protracted equitable distribution proceedings. The considerations involved in a property distribution include the wife's contributions to the well-being and maintenance of the marriage, the duration of the marriage, the circumstances surrounding the marriage dissolution, and sundry other factors. *See* Code § 20-107.3. "Settlement agreements between parties to lawsuits are designed to put an end to litigation and are favored

by the law." *Richardson v. Richardson*, 10 Va. App. 391, 399, 392 S.E.2d 688, 692 (1990). We do not agree that the Agreement simply involved the husband transferring assets to the wife in exchange for the wife obtaining a no-fault divorce and bearing her own legal expenses. The obvious reach of the Agreement recognized much more than the wife's executory promises. We need not recount the specific facts evidencing the wife's substantial contributions to the relationship. We conclude the alleged breaches were immaterial and did not amount to an abandonment of the Agreement.

## CONCLUSION

Accordingly, we affirm the trial judge's refusal to rescind the Agreement. We hold, however, that the parties intended to distribute equally the after-tax royalties and we remand the case for a reconsideration of the royalty distribution under the Agreement. On the remaining questions presented, we affirm the trial judge's rulings and judgment.

*Affirmed in part,*
*modified in part,*
*and remanded.*

Koontz, C.J., and Duff, J., concurred.