## CIRCUIT COURT OF FAIRFAX COUNTY

Rae Thomas

v.

Whitney P. Thomas

June 7, 1995

Case No. (Chancery) No. 84503

BY JUDGE JANE MARUM ROUSH

This matter came on to be heard on May 25, 1995, on the Plaintiff Rae Thomas's "Motion to Modify Spousal Support and/or Interpret Separation and Property Settlement Agreement and/or Clarify Final Decree of Divorce and/or Enforce Final Decree for Divorce and For Attorneys Fees" (the "Motion"). At that time the Court took the matter under advisement. The Court has now had the opportunity to review carefully the arguments and briefs of counsel, as well as the testimony of the parties and their witnesses. For the reasons stated below, the Motion is denied to the extent Mrs. Thomas seeks to receive a portion of her former husband's military pension or additional spousal support.

The facts of the case may be briefly summarized. Plaintiff Rae Thomas ("Mrs. Thomas") and defendant Whitney P. Thomas ("Capt. Thomas") separated in 1982 after a 26-year marriage, and were divorced by a Final Decree of Divorce entered by this Court on November 16, 1983. The Final Decree incorporated a Separation and Property Settlement Agreement entered into by and between the parties on September 12, 1983 (the "PSA").

Section 2.2 of the PSA provides that, except as otherwise provided by the PSA, "each party shall be released fully by the other from any obligation for alimony, support and maintenance and each accepts the provisions hereof in full satisfaction of all obligations for support or otherwise arising

out of the marital relationship." Section 3 of the PSA sets forth the provisions for support of the parties' then minor child. Section 4.1 of the PSA sets forth a detailed formula for the payment of spousal support by Capt. Thomas to Mrs. Thomas.

At issue in the present litigation is Section 4.6 of the PSA. That section provides as follows:

> In addition to the payments required herein, the Husband agrees that all of the applicable benefits available to the Wife in accordance with Title X, Former Spouses' Protection, Public Law 97-252, shall be made available to the Wife and that he will do all that is necessary in accordance with the said public law to ensure the receipt of all such benefits by the Wife including but not limited to the preparation and endorsement by him of any documents required in accordance with the aforesaid public law. Further, the Husband agrees that he will perform any acts such as obtaining a special identification for the Wife that he may be required to do so that all benefits under the terms of the law shall become available to the Wife.

Capt. Thomas retired in February 1995 after 44 years of active duty service in the United States Navy. (Capt. Thomas entered the Navy in 1951, four years prior to his marriage to Mrs. Thomas.) Mrs. Thomas argues that, pursuant to Section 4.6 of the PSA she is entitled to one-half of Capt. Thomas's military pension, or at least one-half of the pension earned during the marriage. Capt. Thomas argues that Section 4.6 of the PSA was intended to enable Mrs. Thomas to continue to enjoy the incidental benefits of being a military spouse after the divorce, such as continued use of the commissary, continued medical and dental care and the like. According to Capt. Thomas, Section 4.6 of the PSA was specifically *not* intended to include his military pension.

As a preliminary matter, the Court must determine whether the disputed contractual language is ambiguous, such that parol evidence is admissible as to the intent of the parties. The Court finds that the language of Section 4.6 is ambiguous. It is not at all clear what is meant by "all of the applicable benefits available to the Wife" in accordance with the Uniformed Services Former Spouses' Protection Act (USFSPA). If "benefits" includes a share of the military spouse's pension, "all of the applicable benefits" could mean fifty percent of the retiree's disposable pay, even if that is more than the "marital share" as that term (which was unknown in 1983)

is now defined in Virginia's equitable distribution statute. *See* 10 U.S.C. § 1408(e)(1). If "benefits" refers to only what is expressly called a "benefit" in USFSPA, it means only medical and dental care. *See* 10 U.S.C. §§ 1072 and 1076. Thus, the language used in Section 4.6 of the PSA admits to a wide range of interpretations. Accordingly, the Court considered the parol evidence of the parties as to what their intent was when entering into the PSA.

Mrs. Thomas testified that, when the parties separated in 1982, the subject of a spouse's interest in the military spouse's pension was something of a "hot topic." The United States Supreme Court had recently ruled in *McCarty v. McCarty*, 453 U.S. 210 (1981), that a state court could not divide a military pension under its community property laws. The Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408, et seq., was enacted effective February 1, 1983, to overrule the holding of *McCarty. See generally Sawyer v. Sawyer*, 1 Va. App. 75 (1985). Mrs. Thomas was aware of USFSPA from reading the newspaper and from her volunteer work with women's groups. When she separated from Capt. Thomas, she was interested in receiving a portion of her husband's pension. She contacted an attorney, A. J. Spero, who was recommended to her by the National Organization of Women. Mr. Spero was not familiar with USFSPA. He contacted the office of Congresswoman Patricia Schroeder, the legislative sponsor of USFSPA, and obtained a copy of USFSPA and familiarized himself with it prior to drafting the PSA. Mrs. Thomas met with Mr. Spero several times and met with her husband three or four times to discuss the issues of child support, spousal support, property division and the division of Capt. Thomas's pension. According to Mrs. Thomas, Capt. Thomas never objected to giving her part of his pension. Capt. Thomas was not represented by counsel in the negotiation or execution of the PSA. Mrs. Thomas testified that she thought Section 4.6 of the PSA gave her 50% of the pension, or at least 50% of that portion of the pension that was earned during the period of time that the parties were married.

Mr. Spero, the attorney that drafted the PSA, testified that the parties' divorce is the first and only case he has handled involving a military pension. He testified he first met with Mrs. Thomas in February 1983. She was interested in receiving a portion of her husband's military pension under USFSPA. After familiarizing himself with USFSPA, he drafted the PSA. Mr. Spero testified that he intended Section 4.6 to give Mrs. Thomas all of the benefits she was entitled to under USFSPA, including a share of her husband's military pension. He knew that Virginia courts had no au-

thority to divide military pensions at the time the PSA was signed and that, if they litigated the pension, Mrs. Thomas would not be awarded an interest in the pension. (The authority of a Virginia court to divide a military pension was not given until the 1985 amendments to § 20-107.3 were effective on July 1, 1985.)

Capt. Thomas testified that his primary interest in his settlement negotiations with his wife was to retain his military pension, free from any claim by his wife. He testified that he expressed that view to both Mrs. Thomas and her attorney Mr. Spero. Capt. Thomas did not know that the pension was not divisible by a Virginia court in 1983. Capt. Thomas testified that he had the same passing familiarity with USFSPA that Mrs. Thomas did, based on his having read many articles about USFSPA in publications such as the *Navy Times*. He thought Mrs. Thomas could obtain a portion of his pension. Because he wanted to retain his pension, he agreed that Mrs. Thomas would receive the family's condominium, custody of their minor child, child support, and spousal support. According to Capt. Thomas, all he received under the PSA were the "clothes on his back, his pension, and a twenty year old Volkswagen." He did not intend Section 4.6 of the PSA to give his wife any interest in his pension. He points out that the word "pension" is not used anywhere in the PSA; nor is "deferred compensation," "retainer pay," "disposable retired pay" or other words synonymous with a military pension. Accordingly, he thought his pension was protected from any claim by Mrs. Thomas. Capt. Thomas testified that, to him, a "benefit" under USFSPA meant that his wife could continue to use the commissary or receive medical and dental care through the Navy. That is why the PSA mentions that he will assist her in obtaining an identification card necessary for her to get those benefits. The identification card would be used by Mrs. Thomas to use the commissary or go to a Navy doctor, not to receive one half of his pension.

This case involves what Professor Corbin called a "common form of mistake," the mistake as to the meaning of words used in a contract:

> Both parties know with accuracy the words used but understand them differently. Either party may inadvertently or ignorantly use words that by common usage do not express his meaning or intention. Either party may inadvertently or ignorantly give to another's words a meaning that the other did not intend or that may not accord with common usage. In such a case there is a misunderstanding of the terms used in making a contract, a misunderstanding that prevents a "meeting of the

minds," that is prevents a true agreement. Nevertheless, there may be a valid contract in spite of such a lack of true agreement.

When two parties have reduced their agreement to writing, using the words that each of them consciously intends to use, it is often not sufficient ground for declaring that the agreement is void or subject to cancellation by the Court that the parties subsequently gave different meanings to the agreed language, or even that they gave different meanings thereto at the time that the agreement was expressed. *If the meaning that either one of them gave to the words was the only reasonable one under the existing circumstances, the other party is bound by that meaning and there is a contract accordingly.*

Corbin on Contracts, § 104 (1952) (emphasis added).

Having reviewed all evidence, and having considered the demeanor and credibility of the witnesses, the Court concludes that the meaning ascribed to the words "all available benefits" by Capt. Thomas was, in the words of Professor Corbin, "the only reasonable one under the existing circumstances."

First, the language used in the PSA and the Final Decree was inadequate to effectuate giving Mrs. Thomas a share of Capt. Thomas's military pension. Under USFSPA, to obtain an interest in a pension, a "Court order" that "specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay" from the military retiree to the former spouse must be entered by a court of competent jurisdiction in accordance with applicable state law. *See* 10 U.S.C. § 1408(a). In this case, such language is noticeably absent from the Final Decree. Conversely, no "court order" with any particular language is necessary to allow a former military spouse to continue to use the commissary or to receive medical or dental care from the military. *See* 10 U.S.C. §§ 1062, 1072, 1076.

The reasonableness of Capt. Thomas's interpretation of the term "benefit" is further supported by the language of USFSPA. USFSPA uses the term "benefit" only when describing continuing health and dental care for former spouses. Furthermore, the PSA provides that Capt. Thomas will assist Mrs. Thomas in obtaining an identification card to assure that she receives all such benefits. A identification card would be used by Mrs. Thomas only to obtain the incidental benefits that Capt. Thomas describes, not to obtain an interest in his pension. As mentioned above, to effectuate

Mrs. Thomas's receipt of an interest in the military pension, a qualifying "court order" would be necessary.

The Court has also considered the PSA as a whole to determine the reasonableness of the parties' contrary interpretations of the term "benefits." Capt. Thomas's testified that all he received under the PSA from his 26-year marriage were his pension, his clothing, and an old car. But for those items, Mrs. Thomas received all of the parties' real and personal property, plus custody of the couple's remaining minor child, child support, and spousal support. Capt. Thomas was willing to yield on these matters to Mrs. Thomas, because he thought he was retaining his pension. Mrs. Thomas has no reasonable explanation as to why Capt. Thomas would agree to give her one-half of his military pension in light of the other terms of the PSA, particularly when she and her attorney knew that at the time of the signing of the PSA in 1983, Virginia courts had no authority to divide military pensions.

Finally, the Court notes that Mrs. Thomas's attorney was the sole drafter of this agreement. Any ambiguity in the agreement will therefore be construed against Mrs. Thomas. *Jennings v. Jennings*, 12 Va. App. 1187 (1991).

For the foregoing reasons, the Motion will be denied to the extent that Mrs. Thomas seeks a share of Capt. Thomas's military pension or increased spousal support. Each party will bear his or her own attorney's fees.