COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


FERN MAE ALLOCCA
                                              OPINION BY
v.  Record No. 0185-96-2            JUDGE JAMES W. BENTON, JR.
                                          DECEMBER 10, 1996
FRANCIS ANTHONY ALLOCCA

            FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                       J. Peyton Farmer, Judge

            Robert B. Machen for appellant.

            R. Scott Pugh for appellee.


        This is an appeal from a final divorce decree that affirmed,
ratified, and incorporated by reference a Property Settlement
Agreement.  Fern M. Allocca seeks to set aside the Agreement and
argues that: (1) her husband repudiated the Agreement by
obtaining discharge in bankruptcy; (2) the Agreement is
unconscionable; and (3) the trial judge erred by admitting into
the evidence, over a best evidence rule objection, a photocopy of
the Agreement.  For the reasons that follow, we affirm the decree
incorporating the Agreement.

                                I.

        After this divorce action was filed by the wife on December
19, 1994, she presented the husband with a proposal to settle
their property rights.  The husband refused that proposal and
asserted that all marital property rights had been decided in
1989 when the parties entered into a Property Settlement
Agreement.  The husband filed a crossbill for divorce and

requested that the 1989 Agreement be affirmed, ratified, and incorporated into the final decree.

At a hearing to determine the validity of the 1989 Agreement, the evidence proved that the parties signed the Agreement on December 18, 1989. The circumstances of signing the Agreement were disputed. The wife testified that she had never seen the Agreement before signing, that the husband came to her place of employment with the Agreement, and that she signed the Agreement in the parking lot moments later. The husband testified that the parties discussed the Agreement thoroughly, caused the Agreement to be modified, and signed the Agreement at a local bank in the presence of a notary public. The notary public testified at the hearing and corroborated the husband's testimony regarding the signing of the Agreement.

The evidence also proved that after the husband and wife separated and signed the Agreement, they sold their marital residence. As required by the agreement, they distributed the proceeds of the sale between them. Because they had performed all other agreed obligations, nothing remained to be done under the Agreement.

During a brief reconciliation, the husband and wife purchased a residence in 1991 and signed a deed of trust note. When they again separated, the husband made the monthly payments on the deed of trust note.

Several days after the wife filed this divorce action, the

husband filed for bankruptcy. The husband listed the wife on the bankruptcy schedules as a co-debtor on the deed of trust note. She received notice of the bankruptcy filing with other creditors. The husband was discharged in bankruptcy on April 19, 1995 while the divorce action was pending.

Following the ore tenus hearing, the trial judge ruled in the divorce proceeding that the Agreement was not unconscionable and was valid. In the final decree of divorce, entered on December 22, 1995, the trial judge awarded the husband a divorce and incorporated the Agreement into the final decree.

## II.

The wife argues that the husband's discharge in bankruptcy constituted a repudiation of the Agreement, giving her a right to rescind the Agreement. In support of her position, the wife relies upon Carter v. Carter, 18 Va. App. 787, 447 S.E.2d 522 (1994).

In Carter, the husband filed for bankruptcy after he separated from the wife. See id. at 788, 447 S.E.2d at 523. He listed the wife as a creditor and identified his obligation to the wife under the parties' property settlement agreement. See id. At the time he sought discharge, the husband had not fully performed his obligations under the agreement and owed money to the wife. See id. Although the wife objected to the discharge, the bankruptcy judge ruled that the obligation was not in the nature of support and discharged the husband's debt to the wife

- 3 -

under the agreement.  See id.

While the bankruptcy was pending, the wife filed the Carter divorce action in the circuit court.  See id.  Upon the wife's motion, the judge in the divorce proceeding ordered rescission of the parties' agreement and ordered the husband to pay the wife additional sums of money.  See id.  On appeal from the final decree in Carter, this Court affirmed the decree and stated that "[b]y seeking and accepting discharge from his obligation under the agreement, [the husband] repudiated the agreement.  He thereby failed in the due performance of his obligation thereunder, giving [the wife] the right to seek rescission pursuant to paragraph 22(a) [of the agreement]."  Id.

This case is distinguishable.  Here, the husband did not seek discharge from his obligations under the Agreement.  He sought discharge in bankruptcy from the deed of trust note for which he and the wife were jointly and severally liable.  The Agreement did not assign to the husband the specific obligation to pay the deed of trust note, which was executed more than a year after the Agreement was signed.  Moreover, unlike in Carter, when the husband in this case filed for bankruptcy, he had performed all obligations that he owed to the wife under the Agreement.  He owed no debt to the wife that could be attributed to the Agreement.

The wife argues that she was entitled to rescind the Agreement because the husband's bankruptcy was a breach of the

Agreement's indemnification clause and constituted a repudiation of the entire Agreement.  We disagree.

Preliminarily, we note that in Carter, this Court affirmed the rescission of the agreement because a specific provision in the parties' contract called for rescission upon breach.  See Carter, 18 Va. App. at 790, 447 S.E.2d at 523.  The Agreement in this case, however, contained no provision mandating rescission for breach or failure to perform.  Indeed, the Agreement stated that a modification or rescission could be executed only in a written agreement signed by both parties.

Although the Agreement in this case contained an indemnification clause, the evidence failed to prove a material breach.  In the indemnification clause, the husband agreed "that he will not hereafter contract nor incur any debts, charges or liabilities for which his wife is, may be or may become liable, and . . . further covenants and agrees that he shall hold the wife free, harmless and indemnified of and from any and all debts, charges or liabilities, past, present or future, which are his debts, charges or liabilities."  The wife made the identical agreement.  By subsequently signing the deed of trust note, however, either the parties jointly violated the indemnification clause by creating a joint and several liability, or the indemnification clause did not apply to the deed of trust note because the note was a joint debt and not "his debt" or "her

- 5 -

debt." We cannot conclude that the indemnification clause, as worded in the Agreement, contemplated that the parties later would voluntarily create a joint and several liability.

In any event, we need not decide whether the husband breached the indemnification clause because the evidence failed to prove that the wife suffered any loss as a result of the husband's bankruptcy. No evidence proved that any money was owed to the deed of trust creditor following the bankruptcy and foreclosure on the property. In addition, no evidence proved that the wife made payments to the deed of trust creditor after the husband ceased payments. Moreover, the husband performed all of his other obligations under the Agreement. Thus, the evidence failed to prove that the breach, if any, was material.

In Jennings v. Jennings, 12 Va. App. 1187, 409 S.E.2d 8 (1991), we confronted a similar rescission argument. The agreement in Jennings included promises by the wife to seek a no-fault divorce and to pay her own attorney's fees. See id. at 1190-91, 409 S.E.2d at 11. Later, the wife sought a fault-based divorce and claimed that the husband should pay for her attorney's fees. See id. at 1198, 409 S.E.2d at 11. We stated:

> We find no merit in the husband's argument
> that the wife breached her only executory
> obligations under the Agreement and,
> therefore, that the Agreement should be
> rescinded. The writing evidences an
> intention to effect an equal distribution of
> the parties' property instead of protracted
> equitable distribution proceedings. The
> considerations involved in a property
> distribution include the wife's contributions
> to the well-being and maintenance of the

marriage, the duration of the marriage, the circumstances surrounding the marriage dissolution, and sundry other factors. . . . The obvious reach of the Agreement recognized much more than the wife's executory promises. . . . We conclude the alleged breaches were immaterial and did not amount to an abandonment of the Agreement.

Id. at 1198-99, 409 S.E.2d at 15-16.

Like the agreement in Jennings, the Agreement in this case was intended to settle all marital rights between the parties. The indemnification provision was just one of many considerations involved.  Assuming arguendo that the husband's discharge in bankruptcy was a breach of the indemnification clause, an issue we need not decide today, we hold that this alleged breach did not constitute a repudiation of the entire Agreement.  No evidence proved that the wife suffered any loss resulting from the alleged breach.  Furthermore, the husband otherwise fully performed.  "'Ordinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract.'" Neale v. Jones, 232 Va. 203, 207, 349 S.E.2d 116, 119 (1986) (citation omitted).  Accordingly, we affirm the trial judge's refusal to order rescission of the Agreement.[1]

---

[1]For the reasons stated in his dissenting opinion in Carter, see 18 Va. App. at 790-94, 447 S.E.2d at 524-26, Judge Benton would hold that any debt the husband owed to the wife, including indemnification, was discharged in bankruptcy by virtue of 11 U.S.C. § 727(b).  See Judd v. Wolfe, 78 F.3d 110 (3d Cir. 1996); In re Beezley, 994 F.2d 1433, 1434-41 (9th Cir. 1993) (O'Scannlain, J., concurring); In re Doughty, 195 B.R. 1 (Bankr. D. Me. 1996).  In this case, the evidence proved the wife received notice of the bankruptcy proceeding and was listed as a co-debtor

III.

The wife also argues that the Agreement is unconscionable. In Drewry v. Drewry, 8 Va. App. 460, 383 S.E.2d 12 (1989), this Court stated the following:

> When a court considers whether a contract is unconscionable, adequacy of price or quality of value transferred in the contract is of initial concern. If a "gross disparity in the value exchanged" exists then the court should consider "whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable."

Id. at 472-73, 383 S.E.2d at 18 (citation omitted). As the party seeking to have the Agreement voided as unconscionable, the wife bore the burden of "prov[ing] the allegations by clear and convincing evidence." Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).

On appeal, this Court must review the evidence in the light

_____

on the bankruptcy schedules. Furthermore, no evidence proved that the wife filed a timely complaint in bankruptcy to contest the dischargeability of the debt or the indemnification obligation. See 11 U.S.C. § 523; Fed. Rule Bankr. P. 4007. Therefore, the bankruptcy order was final. An order by the trial judge rescinding the Agreement would have violated the bankruptcy stay. Thus, for this additional reason, Judge Benton would affirm the trial judge's refusal to order rescission of the Agreement.

most favorable to the husband because he was the prevailing party below.  See id.  So viewed, the Agreement provided that all property the husband or wife obtained before the marriage, or during the marriage by gift or bequest, was to remain separate. They waived all rights to marital property, including their rights to each other's profit sharing, pension, and retirement plans.  The marital home was to be sold and the proceeds used to satisfy all debts owed by the parties, except a debt on one automobile, which was to remain the husband's sole responsibility.  The remaining proceeds from the sale of the home and the remaining balance in the parties' joint bank account were to be divided evenly between the parties.  Finally, they both waived rights to spousal support.

The evidence further proved that when the parties signed the Agreement in 1989, the husband had completed approximately eighteen years of service toward his pension.  His pension would vest after two more years of service.  The wife had completed five to seven years of service under her pension plan.  Each agreed to waive marital rights in the other's pension, and they evenly divided the other marital property.

Although the husband's pension was probably worth more than the wife's, no evidence proved the difference in values. Moreover, no evidence proved that the differences in the pensions "represent[ed] such a disparity in values to indicate that no reasonable person would have so contracted."  Jennings, 12 Va.

App. at 1196, 409 S.E.2d at 14. The wife's evidence of a probable disparity in the values of the parties' pension plans was insufficient to prove by clear and convincing evidence a "gross disparity" in the entire values exchanged under the Agreement. See Drewry, 8 Va. App. at 473, 383 S.E.2d at 18; Jennings, 12 Va. App. at 1196, 409 S.E.2d at 14.

Because the evidence failed to prove a gross disparity in the values exchanged, we need not decide whether the process of forming the Agreement was unfair. See Drewry, 8 Va. App. at 473, 383 S.E.2d at 18. Accordingly, we hold that the evidence was sufficient to support the trial judge's finding that the Agreement was not unconscionable.

IV.

The wife argues that the best evidence rule barred the admission into the evidence of a photocopy of the Agreement. We disagree.

"[T]he best evidence rule requires that, to prove the contents of a document, the 'original must be produced unless it be shown that the original is unavailable, in which case secondary evidence may be introduced.'" Mostyn v. Commonwealth, 14 Va. App. 920, 923, 420 S.E.2d 519, 521 (1992) (quoting Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991)). However, if a copy can properly be treated as a "duplicate original," the copy is admissible without regard to the availability of the original. See Frere v. Commonwealth, 19

Va. App. 460, 466-67, 452 S.E.2d 682, 686-87 (1995) (treating a photocopy as a duplicate original and admitting it into evidence without requiring proof that the original was unavailable); 4 John H. Wigmore, Wigmore on Evidence 548 (1972) ("[A] duplicate . . . may be used without accounting for the nonproduction of [the original].") (emphasis omitted).  This Court has noted that proper circumstances exist to treat a photocopy as a duplicate original when the accuracy of the photocopy is not disputed.  See Frere, 19 Va. App. at 466, 452 S.E.2d at 686-87 (emphasizing that the appellant never asserted that the photocopy was inaccurate); Myrick, 13 Va. App. at 339, 412 S.E.2d at 179; Wigmore on Evidence at 434 ("Production of the original may be dispensed with, in the trial court's discretion, whenever in the case in hand the opponent does not bona fide dispute the contents of the document and no other useful purpose will be served by requiring production.") (emphasis omitted).

In this case, proper circumstances existed to treat the photocopy as an original.  The wife's counsel never asserted that the photocopy was inaccurate; counsel merely stated that "if [the husband] has the original, I'd like for him to put it in."  The husband's counsel acknowledged that the original Agreement was extant but argued that a copy should nevertheless be admitted because, in her response to a request for admissions, the wife admitted that the photocopy was a true copy of the Agreement.

Based on these arguments and circumstances, the trial judge

admitted a copy of the Agreement.  We hold that the photocopy could be treated as a duplicate original and that the trial judge did not err in considering the wife's response to the request for admissions to establish that fact.  Therefore, the copy was admissible without regard to the availability of the original.

For these reasons, we affirm the final decree.

<u>Affirmed</u>.