### Alexandria

### DOROTHY N. SCHWARTING FRY

v.

### WILFORD R. SCHWARTING

No. 0124-86-4

Decided April 21, 1987

COUNSEL

Kaletah N. Carroll, for appellant.

Leslye S. Fenton (Odin, Feldman & Pittleman, P.C., on brief), for appellee.

OPINION

**COLEMAN, J.** — In this appeal, we are asked to decide whether a divorce court is empowered to enforce through its contempt powers a child support decree after the child attained his majority when the terms of the decree track the support provisions of a separation agreement. The trial court ruled that it lacked jurisdiction to enforce the child support obligation, even though the agreement purported to require that support be paid after the age of majority. The court refused to enforce the support provision because the agreement was not incorporated by reference into the decree in accordance with Code § 20-109.1. We disagree with the trial court's ruling and reverse.

We find that the child support provisions of the separation agreement *were* incorporated into the decree and, thus, were enforceable by contempt. Furthermore, we hold that under the terms of the agreement the parties intended that child support be paid until the children reached the age of twenty-one or until they were "otherwise earlier emancipated." Finally, we hold that legislation lowering the age of majority to eighteen was not an event of "emancipation" within the intent or contemplation of the parties which alleviated the duty of support until the children reached the age of twenty-one. Accordingly, we reverse the trial court's dismissal of the rule to show cause and remand the matter for such further consideration as is consistent with the findings of fact and conclusions of law hereafter stated.

After seventeen years of marriage and the birth of four children, the parties separated in 1967 by mutual consent. A Property Settlement Agreement executed February 5, 1969, provided that Wilford Schwarting pay $125 per month per child totaling $500 per month until "said child or children reach the age of twenty-one, marry or are otherwise emancipated." The agreement further specified:

This agreement shall be offered in evidence in such action, and if acceptable to the court, shall be incorporated by reference in the decree that may be granted therein. Notwithstanding such incorporation, this agreement shall not be merged in the decree, but shall survive the same and shall be binding and conclusive on the parties for all times.

On June 12, 1969, a final divorce decree was entered which provided in material part:

. . . and it further appearing to the Court that the parties have on the 5th day of February, 1969, entered into an agreement in writing for the settlement of the marital property rights of each of the parties in and to the property of the other, that are now owned or hereafter acquired, and also setting forth therein an agreement as to the custody of the infant children and provisions of visitation thereof, and making provisions for the support and maintenance of the four minor children, and that the Respondent has agreed in the said agreement to $125.00 per month per child, for the care, support and maintenance of the minor children, making a total of $500.00 per month, said payments to continue until said child or children reach the age of 21 years, marry or are otherwise earlier emancipated, it is further

ADJUDGED, ORDERED and DECREED that the Respondent shall pay to the Complainant the sum of $125.00 per month per child for their care, support and maintenance, making a total of $500.00 per month, said payment to continue until said child or children reach the age of 21 years, marry or are otherwise emancipated, and it is further

ADJUDGED, ORDERED and DECREED that the terms of the said agreement settling the property rights of the parties, be and they hereby are confirmed . . . .

Despite the provisions of the agreement which called for incorporation by reference, the decree recited the terms of the child support provisions of the agreement and then incorporated them *ad haec verba* as the child support order. Neither the agreement nor the decree contained any other provisions concerning the obligation to support, maintain, educate or otherwise provide for the children.

Effective July 1, 1972, the Virginia General Assembly enacted Code § 1-13.42 which reduced the age of majority from twenty-one to eighteen years.[1] Between 1972 and 1984 three of the children attained majority. We are not concerned with their status under the agreement. On October 20, 1982, the youngest child Daniel, who was unmarried, a full-time college student and not self-supporting, became eighteen.

On November 21, 1984, the appellant obtained a rule to show cause why the father should not be held in contempt for violating the original support order by failing to pay $125 per month for Daniel's support between April 6, 1984, and November 12, 1984.[2] The juvenile court[3] held that the parties had not intended by their agreement that child support be paid beyond majority, that "otherwise emancipated" included emancipation by the change in the law which lowered the age of majority, and since no support was due, dismissed the rule and closed the case. On appeal, the circuit court also dismissed the contempt proceeding, but on the ground that it lacked authority to enforce the agreement by contempt because it was not properly incorporated by reference in the divorce decree pursuant to Code § 20-109.1.

Both courts predicated their decision upon separate findings that they lacked authority to exercise their contempt power to enforce the child support obligation. The juvenile court concluded that the support obligation did arise from the agreement and was incorporated in the decree, but ended when the youngest child

---

[1] Code § 20-61 authorizes courts to order that support be paid after a child attains majority under certain circumstances, none of which are applicable in this instance.

[2] The record does not reflect, and the parties place no reliance upon, whether the father voluntarily paid child support for David after he became eighteen on October 20, 1982, until April 6, 1984, the date the alleged arrearage began. It appears from the record that no arrearage existed prior to April 6, 1984.

[3] In 1974 enforcement of the support obligation was transferred from the circuit court to the juvenile and domestic relations district court. *See* Code § 20-79(c).

reached majority; thus, the juvenile court ruled that it had no authority to grant relief after the child attained majority. The circuit court decided that the child support obligation was not incorporated by reference as part of the decree or made enforceable by it.

At the outset, we must decide whether the contractual child support provisions were given the force and effect of a decree of the divorce court. If so, and if as the appellant contends the provision obligated the father to pay support until each child reached the age of twenty-one, then the trial court erred in dismissing the rule to show cause.

■ The jurisdiction of a divorce court to provide for child support is statutory, Code § 20-107.2; *Jackson v. Jackson*, 211 Va. 718, 719, 180 S.E.2d 500, 500 (1971), and divorcing parents cannot by agreement divest a divorce court of its jurisdiction to award child support. *Hammers v. Hammers*, 216 Va. 30, 31, 216 S.E.2d 20, 21 (1975). The extent to which and method by which an agreement for child support is enforceable will depend upon the action taken by the divorce court pursuant to Code § 20-109.1. The court may accept a child support agreement, in whole or in part, *Rodriguez v. Rodriguez*, 1 Va. App. 87, 90, 334 S.E.2d 595, 597 (1985), or it may completely reject the agreement and exercise its statutory right to determine support. If the court accepts the agreement, its decree may merely approve, ratify or affirm the agreement, in whole or in part, without incorporating its provisions into the decree or ordering payment or compliance with its terms. *See Shoosmith v. Scott*, 217 Va. 789, 791-93, 232 S.E.2d 787, 788-89 (1977). In that situation, the decree merely constitutes judicial approval of a private bilateral contract, *see Rodriguez*, 1 Va. App. at 90, 334 S.E.2d at 597 (citing *Shoosmith v. Scott* (citation omitted)), and the provisions of the support agreement do not have the full force and effect of a court's decree and are not enforceable by the court's contempt powers. *See Shoosmith*, 217 Va. at 792, 232 S.E.2d at 789. The court also has the option to incorporate by reference the child support provisions, in whole or in part, as part of the final decree, Code § 20-109.1, and retain jurisdiction to enforce compliance through its contempt powers. Thus, we must determine whether the child support provisions of the decree were based upon the statutory authority of the court to award child support pursuant to Code § 20-107.2, whether the court merely gave judicial approval of the pro-

visions by affirming or approving the agreement, or whether the provisions were incorporated into the decree giving it the effect of a court order.

The appellee does not contend that the divorce court was exercising its statutory power to determine child support. He does contend however that the divorce court merely ratified and affirmed a bilateral agreement and since the agreement was not incorporated as part of the decree nor were payments ordered in compliance with it, the court could not enforce the provisions by contempt. Both the appellee and the trial court construed our holding in *Rodriguez* to require that before an agreement for child support can be given the full force and effect of a decree, the agreement must be incorporated *by reference* in the decree pursuant to Code § 20-109.1 and the decree must track the language of that code section, using the words "affirm, ratify and *incorporate*" (emphasis added).

The trial court interprets the holding in *Rodriguez* too narrowly. Like the situation in *Shoosmith,* the decree in *Rodriguez* merely approved, ratified and confirmed an agreement between the parties. The decree in *Rodriguez* did not incorporate the agreement by reference; it did not achieve verbatim incorporation; and it did not order that payments be made in accordance with the agreement's terms. In stark contrast, the decree in the present case recited the existence and terms of the agreement and incorporated the child support provisions from the agreement almost verbatim by ordering how and when child support should be paid. While a court may in the exercise of its statutory authority to set child support incidentally consider the terms of a bilateral agreement, there is no contention that such was the situation in the present case. The provisions of Code § 20-109.1 authorizing incorporation by reference do not specify the manner by which the divorce court must incorporate the agreement in the event the court elects to do so. In its final decree, the divorce court recited the terms of the parties' child support agreement and incorporated the provisions *ad haec verba*. Incorporation of the agreement *ad haec verba* into the decree rendered the terms of the agreement so incorporated enforceable as a decree of the court. Thus, we hold that the trial court erred in ruling that it lacked jurisdiction to enforce the child support provisions for the reason that they were not incorporated in the decree.

■ We must consider, however, whether the terms of the agreement as incorporated into the decree required payment of child support beyond the age of majority. Parents can contract to extend their legal obligation to support and maintain a child after majority, and when the contractual obligation for this support has been incorporated into a divorce decree, and not thereafter supplanted, altered, or modified, the court retains jurisdiction to enforce the agreement as its decree, unless otherwise limited by the agreement. *See Cutshaw v. Cutshaw*, 220 Va. 638, 641, 261 S.E.2d 52, 54 (1979) (citing *Eaton v. Eaton*, 215 Va. 824, 213 S.E.2d 789 (1975)); *see also Paul v. Paul*, 214 Va. 651, 203 S.E.2d 123 (1974).

■ The trial court did not reach the issue whether the agreement intended that support be paid until age twenty-one or whether the language "otherwise emancipated" in the agreement included the statutory lowering of the age of majority. Nevertheless, on appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court. *See Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally. *See Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985).

■ At the time of execution of the contract, there was no ambiguity on the face of the agreement. It provided for child support until age twenty-one or until the children were "otherwise emancipated." The controversy in construing the contract arose only as a result of the 1972 legislation lowering the age of majority from twenty-one to eighteen. *See* Code § 1-13.42. Applying basic rules of construction of contracts and the rule of statutory construction that new legislation is usually presumed prospective in its operations, and noting Code § 1-16, the Supreme Court held in *Paul v. Paul*, 214 Va. 651, 654, 203 S.E.2d 123, 126 (1974), that the intent of the parties at the time of executing a contract similar to the one in this case was to provide support until age twenty-one "unless emancipation under the then existing law" occurred. The court further held that the words "otherwise emancipated" did "not include emancipation by a change in the law such as was

effected by Code § 1-13.42." *Id.*; *see Eaton v. Eaton*, 215 Va. 824, 827, 213 S.E.2d 789, 791 (1975).

While in *Paul* "other provisions" in the contract proved that the parties intended that attaining majority would not end the support obligation, the absence of such provisions here does not dictate a contrary result. The intent of the contracting parties controls. "To do that [determine intent] the court will put itself in the situation occupied by the parties and look to the language employed, the subject matter and purpose of the parties, and all other pertinent circumstances." *Paul*, 214 Va. at 653, 203 S.E.2d at 125.

The record provides little insight, beyond the terms of the agreement, into the circumstances from which the intent of the parties can be ascertained. Unlike *Paul*, there were no "other" covenants in the contract that clearly evinced an intent to make provisions for the children after their majority. However, in the absence of any evidence to the contrary, the express terms of the contract showed an intent to support the children until each reached age twenty-one or was "otherwise emancipated" according to the law existing in 1969. *Paul* held that the language "otherwise emancipated" did not contemplate emancipation by a statutory lowering of the age of majority, and thus the appellee is bound by the express terms of the contract.

In summation, we conclude that the court erred in holding that it lacked jurisdiction to enforce by its contempt powers the provisions for child support agreed upon by the parties and incorporated in the court's decree. As demonstrated, the agreement as incorporated contemplated support payments until the children reached the age of twenty-one. Accordingly, the support claimed by appellant on behalf of Daniel between April 6, 1984, and November 12, 1984, is an obligation arising from a support decree and is enforceable by the court's contempt powers. On remand, the court shall determine the support due appellant and consider whether the appellee's continued failure to pay constitutes willful disobedience to the court's order.

*Reversed and remanded.*

Koontz, C.J., and Duff, J., concurred.