## CIRCUIT COURT OF WARREN COUNTY

Melissa K. Kuser

v.

Daniel W. Kuser

August 3, 1996

Case No. (Chancery) 96-47

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on August 1, 1996, for trial. The parties appeared in person and with their counsel: J. David Griffin, Esquire, for the Plaintiff; Neal Knudson, Esquire, for the Defendant; and Kathleen Griffin, Esquire, for the Division of Support Enforcement.

Counsel for the parties advised the Court that all issues had been resolved, but that the Division of Support Enforcement wished to be heard on its motion to adjust the child support. Thereupon, the Court heard evidence *ore tenus* on the grounds of divorce and the child support issue, which was argued by counsel. The mother introduced the twelve page July 15, 1996, Separation Agreement into evidence and asked that it be approved and incorporated in the Court's final decree, and the father introduced the two page July 15, 1996, Separation Agreement and asked that it be approved and incorporated in the Court's final decree. The mother and father then rested their cases, and the Court ruled that the grounds for a divorce had been established.

Thereupon, the Division of Support Enforcement stated that it wished to introduce evidence on the issue of child support because the statutory guidelines were higher than the amount which the parties had agreed to, and the Court asked counsel for the Division what standing did the Division have to make such a claim where the parties had settled their differences two weeks before the scheduled trial, and counsel for the Division referred the Court to Virginia Code § 63.1-250.2. The Court then heard the

Department's evidence, and neither the mother nor the father introduced any evidence during this phase of the trial, nor did they challenge the validity of the two July 15, 1996, Separation Agreements, nor did counsel for the mother claim that the issue of child support had been reserved by the parties for determination by the Court.

The Court made the following decision on the issue of child support.

## I. *Findings of Fact*

There was a dearth of evidence in this case, because the parties themselves introduced no evidence on the issue of child support, rather the mother introduced the evidence necessary to prove a no fault divorce and then moved to introduce, approve, and incorporate the twelve page July 15, 1996, Separation Agreement, and the father moved to introduce and incorporate the two page Separation Agreement dealing with the child support. The Division of Support Enforcement then proceeded to introduce evidence on the issue of child support, claiming that there had been a material change in circumstances since the execution of the July 15, 1996, child support agreement, that being the change from joint to sole custody with the mother, and, alternatively, that a mutual mistake of fact required that the parties' two page Separation Agreement of July 15, 1996, not be enforced with respect to the child support. The following facts are established by the greater weight of the evidence.

The determination of child support is governed by Virginia Code §§ 20-108.1 and 20-108.2.

## 1. *Monetary Support for Other Children and Persons*

No evidence was presented on this issue.

## 2. *Custody Arrangements*

The father originally contested custody in this case, and a guardian *ad litem* was appointed. Prior to the trial, the parties settled the custody issue by their July 15, 1996, Separation Agreement by which the mother was granted sole custody of the parties' two children.

## 3. *Imputed Income*

No evidence was presented on this issue.

### 4. *Debts*

The only debt in evidence was the mortgage on the parties' residence, and the parties have agreed to pay one half of the difference between the rental received on the property and the amount due on the mortgage.

### 5. *Court Ordered Payments and Health Care Coverage*

Two Separation and Property Settlement Agreements were executed by the parties on July 15, 1996. One of the Agreements which contains twelve pages, is very detailed, and resolves all issues between the parties except child support, and the other, which covers child support, is two pages and provides that "the parties agree that at this time the Order on child support [September 26, 1995, Warren County Juvenile and Domestics Relations Court] should continue." The Juvenile Court Order was based on a shared custody guideline calculation and provided that the father shall pay child support of $330.09. The father is to provide health care coverage at his expense, which costs him $166.00 per month, and the parties are to pay one half of the children's medical expenses not covered by insurance. The father was ordered incident to this proceeding to pay the costs of the guardian *ad litem.*

### 6. *Capital Gains, Financial Resources, Marital Property, and Earning Capacity of Each Parent*

The father, born August 13, 1964, earns $1,930.00 per month, and the mother, born February 18, 1966, earns $1,689.00 per month. The July 15, 1996, Separation Agreement provides for a division of the parties' personal property and further provides for the sale of the marital residence.

### 7. *Education and Training of the Parties and Earning Capacity*

The parties' earning capacity is discussed above. No other evidence was introduced on this point.

### 8. *Physical and Mental Condition of the Children, Medical and Dental Expenses and Child Care Expenses*

The parties' have two children: Amanda Dawn Kuser, born December 18, 1990, and Tyler Wayne Kuser, born June 2, 1993. The mother reports child care expenses of $416.00 per month.

### 9. *Monetary and Nonmonetary Contributions to the Family's Well-being*

No evidence was presented on this issue.

## 10. *Tax Consequences of Claims for Dependent Children*

The two tax exemptions for the children will be the mother's in this case, and the Mother will have the child care credit.

## 11. *Other Equitable Factors*

A pretrial order was entered in this case on May 20, 1996, by the terms of which the parties were to prefile their financial information. By June 19, 1996, the parties were engaged in settlement negotiations. See Griffin letter of June 19, 1996. On July 15, 1996, the mother and father settled their differences as to custody and support and entered into two separate Separation Agreements.

The Division called the Mother to testify on the issue of change of circumstance and mutual mistake of law. She was the only witness called on these points. The Mother said that the differences between the child support calculated by the statutory guidelines based on shared custody as previously existed under the Juvenile Court Order of September 26, 1995, and the sole custody agreed to under the July 15, 1996, Separation Agreement were not discussed incident to the execution of the two Separation Agreements on July 15, 1996.

Both parties were represented by counsel when they settled their differences and entered the July 15, 1996, Separation Agreements. No claim was made at the trial by either the attorney for the father or the attorney for the mother that they had reserved the issue of child support for determination by the Court incident to the pending case, rather counsel for the mother simply advised the Court that the Division wished to be heard and present evidence on the issue of child support.

## II. *Conclusions of Law*

Neither this Court, nor the Appellate Courts in the Commonwealth have previously considered the issue of the extent to which the Division of Support Enforcement may participate in a child support case, when the mother and father have settled that issue as between them. For some reason, neither expressed to the Court nor reasonably inferable from the evidence, it appears that the parties' resolution of the child support issue did not suit the Division of Support Enforcement, who elected after the parties' had settled their differences by their July 15, 1996, Separation Agreements, to persist in pursuing a judicial determination of the child support, which issue the mother and father had settled. When queried by the Court as to the Division's continued right to appear in this case after

the parties had settled their differences, counsel for the Division referred the Court to Virginia Code § 63.1-250.2, which provides that the Department of Social Services may provide services to modify child support obligations. There was no delinquent support in this case, the mother was not receiving public assistance, and the mother was represented by counsel of her own selection, who, coincidentally, is the husband of the attorney who represented the Department. The mother's and the Department's interests in this case must be identical, otherwise it would be a conflict for the wife to represent the Department and the husband to represent the mother.

The sole right of the Department to participate in a support proceeding where there is no delinquent support at issue and no public funds involved derives from Virginia Code § 63.1-250.2, which provides that "upon receipt of an authorization to seek or enforce a support obligation . . . ." services shall be made available to individuals. This section gives the Department a right to appear *ex relatione* in cases to advance the interests of the party requesting assistance. *See, e.g. Commonwealth ex rel. May v. Walker*, 22 Va. App. 230, 468 S.E.2d 695 (1996). *Ex relatione* proceedings are "Legal proceedings which are instituted by the attorney general (or other proper person) in the name and behalf of the state, but on the information and instigation of an individual who has a private interest in the matter . . . ." *Black's Law Dictionary* (5th ed. 1979), 522-523. In this case when the parties settled their differences, the right of the state to participate in the case ended. In cases such as this, the Department stands in the mother's shoes and is bound by her actions. The Department's standing derives solely from the mother's request, and the Department has no independent standing to remain in the case after the parties have settled their differences, because there is then no issue before the Court upon which a party may validly request assistance under § 63.1-250.2. In this case, the Department seems to envision its role as an ombudsman for the mother and the children. If the legislature had wished to provide for such a role, it would have done so.

Even if the Department had a continued right to participate in this case, it would not alter the result. As the Court of Appeals stated in *Webb v. Webb*, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993):

> Marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain. *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52

(1980) (citation omitted); *Derby v. Derby*, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989).

A Separation Agreement is enforced as any other contract between the parties. *Parra v. Parra*, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985). "Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally." *Fry v. Schwarting*, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987); see *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). The intent of the parties as expressed in the contract controls the interpretation. *Bender-Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971). "When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning." *Smith v. Smith*, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986).

"Where two papers are executed at the same time, or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction and receive the same construction as if their several provisions were in one and the same instrument." *Luck* v. *Wood*, 144 Va. 355, 357, 132 S.E. 178 (1926), *quoting, Portsmouth Refining Co. v. Oliver Refining Co.*, 109 Va. 513, 520, 64 S.E. 56 (1909). In domestic cases, there are frequently collateral agreements. In this case the parties simply reached two separate agreements to settle their differences. The twelve page separation agreement resolved all issues except the child support, and the two page agreement resolved the child support issue.

Where there is a dispute between the parties about child support, and there was none in this case, the Court is not bound by the parties' agreement and may exercise its statutory authority to depart from the terms of the parties' agreement. This is the point argued by the Department in this case. In *Watkinson v. Henley*, 13 Va. App. 151, 158-159 (1991), the Court of Appeals ruled:

> We hold that where parents have agreed upon an amount, or agreed upon other provisions, for the support and maintenance of a child, the trial court must consider the provisions of the agreement, that relate to the factors in Code §§ 20-107.2 and 20-108.1, in deciding whether the presumptive amount would be unjust or inappropriate in a particular case. In so doing, the trial court must consider whether the agreed provisions for the child

would better serve the interest or "equities" for the parents and children. Code § 20-107.2(2)(h). The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternate sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract. See *Milligan*, 12 Va. App. at 988, 407 S.E.2d at 709. Furthermore, we hold that if the trial court finds that the presumptive amount is unjust or inappropriate because the provisions in a separation agreement serve the best interest of the child, the Court may vary from the guidelines by ordering support be paid in an amount equal to the benefits provided for in the contract. Alternately, the Court may, rather than judicially set support, elect to affirm, ratify and incorporate by reference the agreement between the parties, or any provisions thereof, concerning the maintenance and support of the minor children, or establish or impose any other condition or consideration, monetary or nonmonetary. Code § 20-109.1. See *Fry*, 4 Va. App. at 178, 355 S.E.2d at 345.

Thus, while the trial court must proceed to ascertain the presumptive amount of support due under the statutory guidelines, and must make written findings of fact as to why application of the guidelines would be unjust or inappropriate, it retains the authority to approve the provisions of an agreement between the parties, which may include monetary or nonmonetary benefits for the child.

*Accord Scott v. Scott*, 12 Va. App. 1245, 1248-1249, 408 S.E.2d 579 (1991).

In *Jennings v. Jennings*, 12 Va. App. 1187, 1192, 409 S.E.2d 8 (1992), the Court of Appeals expounded upon the character of the mistake necessary to abrogate the agreement or transaction:

"The mistake may be common to both parties to a transaction, and may consist either in the expression of their agreement, or in some matter inducing or influencing the agreement, or in some matter to which the agreement is to be applied. Nothing is more clear in equity than the doctrine that a contract founded in mutual mistake of the facts constituting the very basis or essence of

it will avoid it." *Briggs v. Watkins*, 112 Va. 14, 25, 70 S.E. 551, 554 (1911) (citation omitted). On the other hand, relief will not be granted where the parties, operating with knowledge of all material facts, enter the agreement under a mutual mistake of law. See *Piedmont Trust Bank v. Aetna Cas. & Sur. Co.*, 210 Va. 396, 401, 171 S.E.2d 264, 267-68 (1969).

"The equitable remedy of reformation, however, provides relief against a mistake of fact in a written instrument in only two instances. The first is where the mistake is mutual, that is, where both parties sign an instrument mistakenly believing it reflects their antecedent bargain. *Gibbs v. Price*, 207 Va. 448, 449-50, 150 S.E.2d 551, 552 (1966). The second is where 'there is mistake on the part of [only] one party,' that is, the mistake is unilateral, but it is accompanied by 'misrepresentation and fraud perpetrated by the other'." *Larchmont Properties v. Cooperman*, 195 Va. 784, 792, 80 S.E.2d 733, 738 (1954). *Ward v. Ward*, 239 Va. 1, 5, 387 S.E.2d 460 (1990). No mutual mistake or fraud was proven in this case.

Under the terms of the July 15, 1996, Separation Agreements, the Mother received sole custody and essentially received the same child support as she would have under a shared custody arrangement. The Agreements are clear and unambiguous. Considering the statutory factors, as stated above, the Court does not think that the child support agreed to by the parties is unjust, nor is it contrary to the children's best interests. The statutory guideline calculations are filed in this case, and the child support under the guidelines is $602.00 per month versus the $330.00 per month which the parties agreed to, a difference of $272.00 per month. Under the sole custody arrangement, the father will have the children on an average of 85 days per year, which is only 25 days less than under the previous arrangement. Under the support agreed to, the mother's after tax income will be considerably higher than that of the father.

### III. *Decision*

For the foregoing reasons, the Court decided to approve both of the parties' July 15, 1996, Separation Agreements and to incorporate them into the final decree.