COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Alston and Senior Judge Clements
Argued at Richmond, Virginia


DIANE P. HOWARD

v.      Record No. 2987-08-2

RICHARD K. HOWARD                              MEMORANDUM OPINION* BY
                                               JUDGE ROSSIE D. ALSTON, JR.
DIANE P. HOWARD                                    JANUARY 26, 2010

v.      Record No. 0409-09-2

RICHARD K. HOWARD


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                            Frederick G. Rockwell, III, Judge

                Mollie C. Barton (Andrea R. Stiles; Batzli Wood & Stiles, P.C., on
                briefs), for appellant.

                Brian H. Jones (Barnes & Diehl, P.C., on brief), for appellee.


        Diane P. Howard (wife) appeals from a final decree of divorce (final decree), which

incorporated marital agreements entered into by Richard K. Howard (husband) and wife prior to the

parties' separation.  Additionally, wife appeals an order issued by the trial court clarifying the final

decree's spousal support provision.  On appeal, wife argues the trial court erred by (1) ruling that

husband's financial obligations to wife, the parties' children, and third parties enumerated in the

marital agreements were included in the spousal support award; (2) including in the final decree a

provision that there was no order for health care coverage for wife; and (3) imputing income to wife

for the purposes of spousal support.  We hold that the trial court erred in finding that wife's spousal

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

support award encompassed a number of other obligations to which husband had previously contracted to pay separate from spousal support. Further, the trial court erred by including a provision in the final decree stating that neither party was under a current order for health care coverage for a former spouse. Finally, the trial court did not err in imputing income to wife for spousal support purposes. For the reasons that follow, we reverse and remand in part and affirm in part.

## I. BACKGROUND[1]

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Thus, a trial court's judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it. Jennings v. Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991).

So viewed, the evidence established that husband and wife were married in 1972, and had three children during their marriage. At the time of the parties' separation in 2005, the couple's two oldest children had reached the age of majority, and the youngest child (child) turned eighteen in 2006.

Early in the marriage, wife supported the family while husband was in medical school, and later, husband supported the family while wife pursued a Masters degree. At some point, the couple agreed that husband would be the primary monetary contributor, and wife would serve as a stay-at-home parent to the parties' children.

In June 2003, wife learned that husband had participated in at least fourteen extramarital affairs. After the affairs were disclosed, the parties entered into two post-nuptial agreements in

---

[1] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

an effort to rebuild their marriage and solidify wife's trust in husband. In October 2003, husband and wife entered into a post-nuptial agreement (October 2003 Agreement), in which husband acknowledged his affairs and stated that wife was not at fault for his actions. Further, the agreement stated that wife had an ongoing medical condition that made it difficult for her to work full-time, as the medical issues limited wife's ability to perform both "domestic and professional tasks." The parties agreed that wife would have physical custody of their minor child, and husband agreed to "provide permanent alimony and child support sufficient to maintain a lifestyle comparable to [wife's] current status."

Additionally, husband agreed to "provide health insurance coverage of [wife] and their dependent children. Furthermore, any uninsured medical, dental, orthodontic, optometric and other health care expenses reasonably incurred for [wife] or the benefit of the parties' dependent children or [wife], not otherwise covered by said insurance, will be paid for by husband." Husband also agreed to "provide ongoing dental coverage for both [wife] for life and for the parties' children while full-time students through age 25." The agreement further stated, "Due to the serious impact of [husband's] infidelity on the family unit, [husband] agree[d] to pay any out-of-pocket costs for mental health care or counseling incurred by [wife or the parties' children] throughout the lifetime of each of the members of the family." Moreover, husband agreed to "make all premium payments and keep in force all life insurance and disability insurance presently carried for [both parties] until the age of 65, at which point coverage may be reduced but only if agreed to by the parties as a joint decision."

Finally, the parties agreed that they were bound by the foregoing provisions, subject only to the acceptance and approval of a court of competent jurisdiction in the event of a divorce.

In May 2004, the parties entered into a "Post-Nuptial Agreement and Stipulation" (May 2004 Agreement), which acknowledged and incorporated the October 2003 Agreement. The

parties expressly stated that they freely entered the May 2004 Agreement, and they were not under "duress, fraud, or undue influence." The agreement further stated,

> Should the parties ever separate and/or divorce, upon presentation to the Court of a final decree of divorce, husband and wife agree to request the Court to affirm, ratify, and incorporate, but not merge, this Agreement, as well as the [October 2003 Agreement], into said decree. Failure of the Court to find that this Agreement or [the October 2003 Agreement] is fair and equitable to both husband and wife shall in no manner affect the validity of this [agreement,] and, in such a case, the same shall remain enforceable by either against the other. The validity [of the agreements] does not depend upon a Court finding that [they are] fair and equitable. Husband and wife agree to be bound hereby in any event.

In a number of provisions, the parties made statements alluding to husband's extramarital affairs, and husband essentially agreed to take responsibility for the majority of the parties' financial obligations. The agreement stated, "Husband shall be solely responsible for paying the mortgage payments on this new residence, and shall defend, indemnify and hold wife harmless from making payments on this mortgage until the loan balance is paid in full." Regarding the parties' debts, the agreement stated, "Should the parties ever separate and/or divorce, husband shall be solely responsible for paying in full, and on a timely basis, all debt in either or both parties' names." Both the May 2004 Agreement and the October 2003 Agreement stated that the parties' marital residence was wife's separate property.

The parties also agreed to numerous provisions regarding spousal and child support:

> A.  Should the parties ever separate and/or divorce, husband shall provide temporary . . . and permanent . . . spousal support to wife on a monthly basis, the after-tax amount of which shall be sufficient for wife to maintain a life style comparable to wife's and the children's current status. The spousal support shall be included as income to wife and deductible to husband.
>
> B.  In addition, should the parties ever separate and/or divorce, husband shall provide child support to wife on behalf of [their youngest child] in an amount based upon the child support guidelines and utilizing husband's income, without regard to wife's income or any amount of spousal support

received by wife. Such child support shall continue until the earliest of [child's] college graduation or attaining the age of twenty-three.

Moreover, the parties agreed that husband was to maintain the current medical and dental insurance policy for wife and the children, or, if he ceased to carry that policy, he agreed to obtain comparable coverage for wife, and the children, "so long as the children were eligible to be covered under [the] family policy." Additionally, the agreement stated that after the entry of the final decree of divorce, wife agreed to obtain medical insurance, and "[h]usband shall be solely responsible for making any and all payments toward these monthly premiums on wife's insurance policy." The parties also agreed,

C.      All uninsured medical, dental, orthodontic, optometric, counseling, and other health care expenses incurred by wife, or incurred for the benefit of wife, not otherwise covered by insurance, will be paid by husband. All uninsured medical, dental, orthodontic, optometric, counseling, and other health care expenses incurred by [the children], or incurred for their benefit, not otherwise covered by insurance, will be paid by husband until that child attains the age of twenty-five.

D.      Due to the serious impact of husband's infidelity on the family unit, husband agrees to pay any out-of-pocket expenses and costs for mental health care or counseling incurred by wife, [and/or the children] throughout the lifetime of each of the members of the family.

Finally, the parties included a number of provisions regarding life insurance policies, and the most pertinent provision stated, "Husband shall make all premium payments and maintain in force all current life insurance policies presently carried for both husband and wife until wife reaches the age of sixty-five . . . . Upon wife reaching the age of sixty-five . . . , certain coverage may be reduced but only if agreed to the parties as a joint decision and in writing."

The parties separated in July 2005, and in January 2006, husband filed a complaint for divorce. In October 2006, husband filed an amended complaint for divorce, which asked the trial court to set aside both the October 2003 and May 2004 agreements. He averred that they were

unconscionable, and "procured by undue influence, coercion, and fraud." Wife filed an answer and counterclaim, in which she asked the trial court to incorporate the marital agreements into the final decree.

After hearing evidence on the matter, the trial court ruled in an April 2008 *pendente lite* order that the October 2003 Agreement and the May 2004 Agreement were valid. The trial court later issued a letter opinion regarding permanent spousal support and child support, relying on the marital agreements to resolve the issue of spousal support.

Because the marital agreements did not specify a defined amount of spousal support, the trial court relied on the spousal support factors articulated in Code § 20-107.1 to determine the award. The trial court discussed each of the Code § 20-107.1 factors in detail. Most relevant to our instant analysis are the trial court's findings that husband had a monthly gross income of $16,667 and that pursuant to the marital agreements, he was liable for all of the parties' debts, which exceeded $700,000. The trial court further found that wife began working for the Virginia state government shortly before January 2006, and that her employment ended in August 2007. The trial court found that at her previous employment, wife earned $40,000 per year and that the Virginia Unemployment Commission was issuing her $1,573 per month.

Wife submitted an expense statement claiming expenses of $6,000 per month, and the trial court noted that this figure did not include the amount of wife's mortgage payment of $2,490, which husband was obligated to pay under the marital agreements. Nor did it include wife's health care costs, which totaled more than $1,000 per month.

In making the spousal support award, the trial court found that wife was voluntarily unemployed, as she had recently lost her job due to unsatisfactory performance. The trial court found that wife was seeking employment, and had submitted evidence of an extensive job search. Wife indicated a desire to re-enter the workforce, but acknowledged that her health issues were

an obstacle. The court imputed income in the amount of $40,000 per year to wife. The trial

court found that wife inflated her expenses in the expense statement, and awarded wife $3,575

per month in spousal support. The trial court concluded that this amount was sufficient for wife

to maintain a lifestyle comparable to the one she enjoyed in May 2004. The trial court noted that

husband was also obligated to pay the mortgage on the marital home and wife's health care

costs. Further, the trial court awarded wife child support in the amount of $735 per month until

child reached the age of twenty-three, pursuant to the parties' marital agreements.

In September 2008, a decree incorporating the October 2003 Agreement and May 2004

Agreement was entered pursuant to Code § 20-109.1. On November 13, 2008, the trial court

entered an order incorporating its April 2008 letter opinion into an order of the trial court.[2] The

order also stated that husband

> shall maintain health care coverage for [child] pursuant to the
> parties' Agreement dated May 11, 2004. [Husband] is further
> responsible for maintaining [wife] on his health insurance coverage
> or paying to [wife] the cost for her to maintain her own health care
> coverage; and . . . [t]hat pursuant to the parties' Agreement dated
> May 11, 2004, in addition to the spousal support obligation,
> [husband] shall pay all uninsured health, dental and other specified
> medical expenses for [wife] and the child as specified in the
> Agreement.

Husband objected to the above provisions, stating that these provisions were not part of the April

2008 letter opinion. Husband further objected on the grounds that the order did not reflect that

the marital agreements were modified by the April 2008 letter opinion.

Also on November 13, 2008, the trial court entered the final decree. The final decree

incorporated the marital agreements by reference, "except to the extent that the Court's rulings

may conflict with the provisions of the agreements, and that the opinions of the Court as

---

[2] Judge Cleo Powell presided over the *pendente lite* hearing in this matter and issued the
court's letter opinion in April 2008. Judge Frederick Rockwell, III, presided over the remaining
trial proceedings.

- 7 -

expressed *ore tenus* and in its letter opinion dated April 1, 2008[,] are also affirmed, ratified and incorporated, but not merged into [the] Decree." The final decree's spousal support award of $3,575 per month and child support award of $735 per month mirrored the award provided in the April 2008 letter opinion; however, the final decree did not specifically identify all of the obligations that husband was responsible for under the marital agreements and the April 2008 letter opinion, which stated that husband was responsible for the marital residence's mortgage, wife's health insurance, and the couple's joint debts, separate from husband's spousal support obligation. The decree also contained a provision stating, "Upon entry of this Decree, neither party is under a current order for health care coverage for a spouse or former spouse." Both parties noted objections.

On November 26, 2008, wife moved for clarification of the final decree and for the entry of a revised final decree. Wife requested

> clarification in the Final Decree of Divorce to reflect the Court's rulings which require [h]usband to pay the mortgage, health insurance, unreimbursed medical expenses, life insurance premiums, payments on behalf of the children, and other obligations *in addition to child support and spousal support*. . . . The written agreements clearly state, testimony and argument at prior hearings in this matter establish, and Judge Powell's rulings reference, that [h]usband has obligations to pay debts and payments *in addition to child support and spousal support*. The Final Decree of Divorce should accurately reflect these obligations and protect [w]ife's interests.

On December 2, 2008, husband moved the court to clarify whether the spousal support payment of $3,575 per month was intended to encompass all of husband's obligations to wife.

On December 16, 2008, the trial court issued a letter opinion stating that the $3,575 monthly spousal support award was "inclusive of the sums that [husband] was required to pay under the terms of the settlement agreements and that this sum represents his total spousal

support payment to [wife]." An order (hereafter "clarification order") reflecting the December 16, 2008 letter opinion was entered on January 29, 2009.

Wife timely noted her appeal to both the final decree and the clarification order. The two appeals were consolidated by an order of this Court on March 25, 2009.

## II.  ANALYSIS

1.  The trial court erred in holding the spousal support award of $3,575 was inclusive of husband's other enumerated financial obligations.

On appeal, wife argues the trial court erred in ruling that husband's financial obligations under the marital agreements to wife, the parties' children, and third parties were included in the spousal support award. She argues that although the agreements do not explicitly state that husband's financial obligations (i.e., the mortgage payments, wife's health insurance premiums, wife's unreimbursed medical expenses, life insurance premiums, and debts) are separate from his spousal support obligations, the non-spousal support obligations are listed individually under separate headings. Wife asserts that the individual provisions indicate an intention to treat the obligations separately. She further argues that the April 2008 letter opinion considers the obligations to be separate. Finally, she argues that the marital agreements should control, to the extent that their provisions are not impossible and do not conflict with the law of Virginia. We agree with wife and conclude that the trial court erred in its ruling that the spousal support was inclusive of all of husband's other financial obligations to wife.

Pursuant to Code § 20-109(C),[3] the final decree may not contain any condition that is not in accord with the marital agreements. Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350

---

[3] Code § 20-109(C) provides in pertinent part:

> In suits for divorce, . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or

(2008). The trial court's interpretation of the marital agreements incorporated into the final decree is a legal determination that we review *de novo*. Id. (citing Palmer & Palmer Co., L.L.C. v. Waterfront Marine Constr., Inc., 276 Va. 285, 289, 662 S.E.2d 77, 80 (2008); Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002); Henderlite v. Henderlite, 3 Va. App. 539, 541, 351 S.E.2d 913, 913-14 (1987)).

Marital agreements "are subject to the same rules of construction and interpretation applicable to contracts generally." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). Accordingly, "[w]here the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement," Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994), and "courts are bound to say that the parties intended what the written instrument plainly declares," W. F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc., 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). On appeal, this Court must construe the contract as a whole. Stacy, 53 Va. App. at 48, 669 S.E.2d at 353 (citing Quadros & Assocs., P.C. v. City of Hampton, 268 Va. 50, 55, 597 S.E.2d 90, 93 (2004)).

The May 2004 Agreement is the primary instrument establishing husband's obligations toward wife in the event of a divorce. In this agreement, husband's obligations regarding the marital residence mortgage, wife's health insurance premiums, wife's unreimbursed medical expenses, life insurance premiums, and debts to third parties are listed separately from his obligation to pay wife spousal support. It is clear from the May 2004 Agreement that the parties intended that husband would pay spousal support sufficient to maintain wife's standard of living, in addition to husband's duty to pay for the expenses previously referenced.

---

counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.

The final decree incorporated the trial court's April 2008 letter opinion, which awarded wife $3,575 in spousal support. The letter opinion is unambiguous in its conclusion that husband's spousal support obligation was separate from his other obligations. In discussing wife's expense statement in the letter opinion's "Award" section, the trial judge wrote, "[Wife] expresses the need for $6000 a month in living expenses over-and-beyond those expenses in addition to spousal support [husband] is obligated to pay under the marital agreement." In a footnote to this sentence, the letter opinion stated, "Dr. Howard is obligated to pay the mortgage of $2490 on the marital home that is now [wife's] separate property, as well as health care costs for [wife] totaling more than $1000 a month."

Although it is well established that courts have the authority to interpret their own orders, the interpretation must be reasonable. Roe v. Commonwealth, 271 Va. 453, 457-58, 628 S.E.2d 526, 528 (2006) (citing Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 412 (2002)). In the instant case, the trial court's interpretation of the marital agreements and the provisions of the April 2008 letter opinion, as incorporated into the final decree, cannot be sustained. The clear intention of the parties as manifested in the marital agreements, was to assign husband the bulk of the parties' financial obligations. The April 2008 letter opinion reflects this understanding of the parties' intent. The April 2008 letter opinion discussed the mortgage and wife's health care costs, which nearly equal the spousal support award, and indicated that these items were considered husband's financial obligations independent of his duty to pay wife's day-to-day living expenses. Accordingly, the trial court erred in its decision that the $3,575 spousal award was inclusive of husband's obligations regarding wife's mortgage, health insurance premiums, unreimbursed health care expenses, life insurance premiums, and third party debt.

2. Husband was obligated to pay wife's health care premiums.

Wife argues that the trial court erred by including in the final decree a provision stating there was no order for health care coverage of a former spouse, because the May 2004 Agreement, which was incorporated into the final decree, provided that husband "shall be solely responsible for making any and all payments toward [the] monthly premiums on wife's [health] insurance policy" subsequent to the entry of the final decree. Husband does not dispute that he is required to pay for wife's health insurance, but he contends that the payment for the insurance is included in the spousal support award of $3,575.

As discussed above, the trial court erred in its conclusion that the spousal support award of $3,575 encompassed husband's obligation to pay wife's health care insurance premiums. As such, the provision in the final decree stating there was no order for health care coverage for a former spouse was also in error.

3. The trial court did not err by imputing income to wife for computation of the spousal support award.

Finally, wife contends that the trial court erred by imputing income of $40,000 to wife when husband failed to prove that wife was voluntarily unemployed or voluntarily underemployed. She argues that husband did not meet his burden of proof, because he did not show that wife was "voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available." McKee v. McKee, 52 Va. App. 482, 491, 664 S.E.2d 505, 510 (2008) (citing Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 19-20 (2001)).

Spousal support decisions "'rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995) (quoting Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994)). "A trial court may impute income to the

- 12 -

spouse receiving . . . spousal support under the appropriate circumstances." Id. (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990)). The trial court must consider the factors enumerated under Code § 20-107.1(E) when deciding whether to impute income to a party. Brandau v. Brandau, 52 Va. App. 632, 638-39, 666 S.E.2d 532, 536 (2008). The trial court must also consider the current circumstances of the party to whom income will be imputed, "'and what the circumstances will be within the immediate or reasonably foreseeable future.'" McKee, 52 Va. App. at 490, 664 S.E.2d at 509 (quoting Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679). "The party seeking the imputation [of income] is required to present evidence 'sufficient to enable the trial judge reasonably to project what amount could be anticipated.'" Id. at 491, 664 S.E.2d at 510 (quoting Joynes, 36 Va. App. at 421, 551 S.E.2d at 20).

Husband presented evidence that wife had an advanced degree, and held several jobs early in the marriage, but was a stay-at-home parent throughout most of the marriage. He also showed that wife was employed from January 2006 to August 2007, and that she earned an income of $40,000 per year. In making its determination that wife was voluntarily unemployed, the trial court discussed the provisions of Code § 20-107.1(E) factors in detail, and specifically noted that wife "lost her job due to unsatisfactory performance during the probationary period" of her employment. The trial court did note that wife's health was a "burden on both her and potentially on any prospective employer"; however, the trial court found that wife's "physical condition is improving."

Based on the evidence before the trial court, we cannot say the trial court abused its discretion by finding that wife was voluntarily unemployed and imputing to her an income of $40,000 per year, which is the income she earned at her most recent employment.

4. This Court declines to award appellate attorney's fees to either party.

Both parties have requested appellate attorney's fees.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny both parties' requests for an award of attorney's fees and costs incurred on appeal. See O'Loughlin, 23 Va. App. at 695, 479 S.E.2d at 100.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's decision that the $3,575 monthly spousal support award is inclusive of the sums husband was required to pay under the terms of the marital agreements and that $3,575 represents husband's total spousal support payment to wife. We remand for reconsideration of the spousal support award and health insurance decision, consistent with applicable law. Additionally, we affirm the trial court's imputation of income to wife. Both parties' requests for attorney's fees are denied.

Affirmed in part and reversed and remanded in part.